Zita Lang, Appellant *v.* County of Delaware, Appellee.

Argued December 12, 1984, before Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*Alexander A. Di Santi, Richard, Di Santi, Hamilton, Gallagher & Paul,* for appellant.

*Harry J. Bradley,* Assistant County Solicitor, with him, *Francis P. Connors,* County Solicitor, for appellee.

OPINION BY JUDGE DOYLE, April 2, 1985:

This is an appeal by Zita Lang (Plaintiff) from a decision and order of the Court of Common Pleas of Delaware County sustaining preliminary objections in the nature of a demurrer and dismissing Plaintiff's complaint. Plaintiff is the widow of Ernest L. Lang. Mr. Lang had been employed by the County of Del-

aware (County) as a county park police officer. On December 10, 1978 Mr. Lang, while attempting to foil an armed robbery, suffered gun shot wounds from which he died that same evening. Plaintiff sought from the County a $25,000.00 death benefit, said benefit provided by Section 1 of the Act of June 26, 1976, P.L. 424, *as amended,* 53 P.S. §891 (Act 101).

When Plaintiff failed to receive the $25,000.00 death benefit she filed a writ of mandamus in the common pleas court seeking an order that the County be compelled to pay the money. The County filed preliminary objections in the nature of a demurrer alleging that Plaintiff's complaint failed to state a claim upon which relief in mandamus can be granted because

1. Defendant is not obligated to pay Plaintiff $25,000.00 until Defendant has itself received said sum from the Commonwealth; and

2. Plaintiff's claim for death benefits on account of her decedent is sufficiently questionable that relief in mandamus is inappropriate.

The trial court sustained the preliminary objections and dismissed the complaint. This appeal ensued.

The County maintains that under Act 101 it has no duty to pay any death benefit until it first receives the money from the Commonwealth. Therefore, it argues that mandamus is inappropriate to compel payment. In order to understand at what point the County's duty to make payment arises (if in fact any duty is found to exist) we must examine Section 1 of Act 101 as it was originally enacted and compare the original version with the amended one. As originally enacted in 1976 Section 1 of Act 101 stated:

A political subdivision shall pay to the surviving spouse . . . of a fireman or law enforcement officer of the political subdivision killed in the performance of his duties the sum of $25,000.

> The benefit shall be payable whether or not the officer was killed within the corporate boundaries of the employing municipality.
>
> . . . .
>
> Upon payment of this death benefit by a political subdivision, the political subdivision shall apply to the State Treasurer and be reimbursed for the total amount by the Commonwealth of Pennsylvania. . . .

In contrast, the 1981 amendment to Section 1 added the words "ambulance service or rescue squad member" to covered personnel and, in addition, revised the mode of payment of the death benefit. Instead of paying the survivor the death benefit at the outset, the County, under the 1981 amended version of Act 101, is to "submit certification of such death to the Commonwealth." The 1981 amendment goes on to state:

> Upon receipt of such certification, the Commonwealth shall, from moneys payable out of the General Fund, pay to the political subdivision the sum of $25,000. Within five days of receipt of said sum from the Commonwealth, the political subdivision shall pay such sum as a benefit. . . .

The trial court correctly noted that mandamus is proper to compel performance of a ministerial act or mandatory duty where the plaintiff has a clear legal right and the defendant has a correspondingly clear duty and where there is a want of any other adequate and appropriate remedy. *Bronson v. Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980); *Styers v. Wade,* 30 Pa. Commonwealth Ct. 38, 372 A. 2d 1236 (1977) *aff'd per curiam,* 478 Pa. 631, 387 A.2d 666 (1978). Because the trial judge concluded that the amendatory act made the revised mode of payment retroactive to January 1, 1976, so as to be applicable

to the 1978 date of death averred in this case, he held that the amendment eliminated any clear duty on the part of the County to pay the death benefit to Plaintiff and, accordingly, sustained the demurrer on that basis alone.

Plaintiff argues that the 1981 amending act, in its Section 2, appeared to confine the retroactive effect only to the provision for expanded coverage, by stating that

the provisions relating to the clarification in the definition of "firefighter, ambulance service or rescue squad member or law enforcement officer" shall be retroactive to January 1, 1976 and shall be applicable to all claims for benefits under this act arising on and after said date.

As the County pointed out, however, and the trial judge agreed, Section 3 of Act 101 as amended and restated in 1981, now contains broader retroactive terms as follows:

This act shall take effect immediately and its provisions shall be retroactive to January 1, 1976 and shall be applicable to the deaths of all firefighters, ambulance service or rescue squad members and law enforcement personnel dying on and after said date as the direct result of injuries sustained in the performance of their duties, regardless of the date when such injuries occurred.

Does that provision make the entire amended act, including the revised method of payment, retroactive to 1976, or should the plain terms of the more limited section 2 of the 1981 amendment control, making only the definition change retroactive?

Where a statutory amendment involves only a procedural change, rather than a revision of substantive rights, there is no impediment to retroactive operation.

*Philboro Coach Corp. v. Pennsylvania Public Utility Commission,* 55 Pa. Commonwealth Ct. 46, 423 A.2d 751 (1980). The controlling impact of the amendment therefore is that the terms of Section 3 of Act 101, as reenacted by the amendment in 1981, are effective to make the mode of payment retroactive to 1976.

That effect comports with rationality. Once the legislature decided in 1981 that the Commonwealth should make initial payments and not just reimbursements to political subdivisions, the new mode of payment logically could be expected to apply to all benefits paid thereafter, without having a pointlessly different approach for pre-1981 deaths. Hence, the conclusion must be that Act 101 as applied to 1978, prescribes the steps in the payment process to be: (1) the employer political subdivision certifies to the Commonwealth the occurrence of a death[1] (2) the Commonwealth pays $25,000 to the political subdivision, and (3) within five days thereafter, the political subdivision forwards that payment to the survivor entitled to it.

That revised process, however, differs from the original process only to the extent that the original

---

[1] If there is a factual dispute as to whether death occurred during the performance of duties, this issue is subject to a due process hearing before the Department of General Services (DGS), Bureau of Risk and Insurance Management (Bureau). *See* 4 Pa. Code §§89.1-89.35. In *Murphy v. Township of Abington,* 88 Pa. Commonwealth Ct. 491, 490 A.2d 483 (1985), we held that a political subdivision or Commonwealth agency is required, pursuant to Section 1 of Act 101, to certify only that death occurred and not that death occurred during the performance of duties. This later issue, if in dispute, is to be determined by the Bureau. *Murphy* further held that the certification is a ministerial duty for which mandamus will properly lie. Finally, *Murphy* noted that there is no legal basis for assuming that a political subdivision's position with respect to a workmen's compensation claim would be prejudiced by completing the mandatory certification.

version of the statute had the political subdivision first making payment and thereafter being required to "apply" to the Commonwealth for reimbursement. We therefore agree with the trial court and the County that the change was merely procedural and that the amended process represents no difference in substance. It is clear that under both the 1976 and the 1981 versions of Section 1, the political subdivision's duty is to complete the certification process and if the parties dispute coverage, upon a determination that the decedent is covered by Act 101, to pay the survivor. The 1981 amendment merely places the political subdivision in a more favorable and protected position, in that it now is to submit a certification to the Commonwealth before it makes the payment in order to receive from the Commonwealth the funds which enable it thereafter to make the payment without risk. Thus, the trial court correctly concluded that no present duty on the part of the County to make payment had been shown, because the County had not received payment from the Commonwealth.

We next consider the County's second demurrer which is directed to the question of entitlement on the part of Plaintiff; it raises the questions of (1) whether Mr. Lang was a law enforcement officer under Act 101, and (2) whether he was killed "in the performance of his duties."

---

In the instant case the County, in its brief, asserts that it has completed the Bureau's Report of Death form (promulgated under 4 Pa. Code §89.11). The County maintains the position, however, that Mr. Lang was not killed during the performance of his duties. Finally the County states in its brief that while it "inadvertantly neglected to obtain notarization" of the form, it is willing to do so. Thus, unlike *Murphy*, mandamus is not necessary here unless Plaintiff would aver that the County, having completed the form, refuses to submit it to the Commonwealth.

### Status of a Member of the County Park Police as a Covered Peace Officer

Significantly, Act 101 does not define the term "law enforcement officer" to mean a "police officer" or "policeman," but incorporates the definition of "peace officer" from 18 Pa. C. S. §501, the pertinent portion of which reads:

> "*Peace officer.*" Any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses. . . .

Accordingly, *Bilbow v. Delaware County,* 1 D. & C. 3d 141 (1976), on which the County places great reliance, is wholly inapplicable because that mandamus decision of the Common Pleas Court of Delaware County, concerning the same organization (the Delaware County Park Police) related only to whether those personnel constituted "policemen" under Section 1 of the Act of June 24, 1968, P.L. 237, 43 P.S. §217.1 (Act 111) which deals with collective bargaining—a different matter.

Like the *Bilbow* court, however, we must look first at Section 3033 of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. §6033,[2] which provides the authorization for county park police; except as a county's home rule charter may otherwise provide, the county is authorized to appoint "proper persons to do all necessary and proper work . . . including police duty. . . ." Section 3034, 16 P.S.

---

[2] Section 1 of the Act of October 20, 1967, P.L. 472 amended Section 102 of the Second Class County Code, 16 P.S. §3102, making that Code applicable to all counties of the Second Class A, thus including Delaware County.

§6034, describes the county park police powers as follows:

> It shall be the duty of the police appointed to duty in said public parks, without warrant, forthwith to arrest any offender against the rules and regulations ordained by the county commissioners that they may detect in the commission of such offense, and to take the person so arrested forthwith before a magistrate, alderman or justice of the peace having competent jurisdiction.

In this case, the question is *not* whether Mr. Lang came within the class of "policeman" under Act 111 which is interpreted to embrace police officers in the strictest sense and to exclude those confined to making arrests for minor matters. Rather, the question is was Mr. Lang a "peace officer" under Act 101. It is apparent that Act 101 covers a *much broader officer class,* one which includes jail guards. It equates the covered class with a "peace officer," including one whose duty may be "limited to specific offenses." Therefore we hold that a county park police member, even though confined to a specialized law enforcement task and limited to making sight arrests for minor offenses, is "a peace officer" under Act 101.

### *Factual Question as to Death in Performance of Duties*

The question of whether or not Mr. Lang was in the performance of his duties as a member of the county park police is a question of fact to be determined by the reception of evidence, not by the factual averments in the County's brief. That brief, in the nature of a speaking demurrer, claims that the County could show that Mr. Lang was killed in the course of a crime committed on property not within a county park nor at the county courthouse. The complaint avers, however,

that Mr. Lang died in the performance of duties; hence, we cannot assume the contrary, noting particularly that Section 1 of the Act 101, as it stood in 1978, expressly covered even deaths outside the political subdivision and therefore indicated that locale, in itself, would not necessarily constitute a barrier to coverage.

Because there remains the factual question of whether death occurred during the performance of duties a hearing is necessary before Plaintiff's right to the $25,000.00 death benefit can be determined. The necessity for a hearing on this factual question indicates that the grant of mandamus would be inappropriate. Clearly, there is no obligation for either the Commonwealth or the County to pay out anything until there is a determination (or an admission) that death occurred during the performance of duties.

Although the parties here have made no mention whatsoever in their briefs of the Department of General Services (DGS) regulations, this Court cannot ignore them inasmuch as we have previously dealt with them in connection with our decision in *Seybold v. Department of General Services,* 75 Pa. Commonwealth Ct. 118, 461 A.2d 353 (1983), involving an issue not present in this case, and in *Murphy v. Township of Abington, see supra* n. 1. Based upon our decision in *Murphy* we hold that the proper forum for a hearing on whether death was in the performance of duties is with DGS. Accordingly, we will vacate the trial court's order sustaining the preliminary objections of the County, thereby, in effect, reversing the trial court's dismissal of the complaint, and remand this case to the court of common pleas with directions that it order the County to submit the certification to DGS so that a determination as to whether Mr. Lang's death was in the performance of duties can be made. 42 P.S. §706.

462

ORDER

Now, April 2, 1985, the order of the Court of Common Pleas of Delaware County, No. 82-10935, dated June 24, 1983, is vacated thereby, in effect, reversing the trial court's dismissal of the complaint. This case is remanded to the Court of Common Pleas of Delaware County for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge WILLIAMS, JR., did not participate in the decision in this case.