Mary C. Murphy, Appellant *v.* Township of Abington and Albert Herrman, Manager, Township of Abington, Appellee.

Argued December 13, 1984, before Judges CRAIG and DOYLE and Senior Judge BLATT, sitting as a panel of three.

*Louis J. Sinatra,* with him, *Peter L. Fiss, Lesser & Kaplin, P.C.,* for appellant.

*Paul A. Logan, Waters, Gallagher & Trachtman,* for appellees.

OPINION BY JUDGE DOYLE, April 2, 1985:

This is an appeal by Mary C. Murphy (Plaintiff) from an order of the Court of Common Pleas of Montgomery County sustaining a preliminary objection in the nature of demurrer, filed by the Township of Abington and Albert Herrman, the Township Man-

ager, (Township) which dismissed Plaintiff's complaint in mandamus. Plaintiff is the widow of James J. Murphy, Sr., who died on May 30, 1980. Mr. Murphy, at the time of his death, was a volunteer member of the Weldon Fire Company for the Township of Abington. On May 30, 1980 Mr. Murphy was directing traffic at the scene of a fire when he collapsed in the street. First aid was administered to Mr. Murphy at the scene and he was taken to Abington Memorial Hospital where he died later that evening.

Subsequent to her husband's death, Plaintiff, pursuant to Section 1 of the Act of June 26, 1976, P.L. 424, *as amended,* 53 P.S. §891 (Act 101), determined to apply to the Department of General Services, (DGS) Bureau of Risk and Insurance Management (Bureau) for the $25,000 in death benefits provided for surviving spouses of firefighters killed in the performance of their duties. Section 1 of Act 101 provides in pertinent part:

In the event a . . . firefighter is killed in the performance of his duties, such political subdivision within 30 days from the date of death *shall* submit certification of such death to the Commonwealth. (Emphasis added.)

As part of the application procedures Plaintiff submitted to the Township a Report of Death form and requested that the Township process the form. This form appears in the regulations promulgated by DGS. *See* 4 Pa. Code §89.11.

The Report of Death form states that it is to be completed by the political subdivision or Commonwealth agency. In addition to spaces for general information such as the decedent's name, address, social security number, date of injury, date of death, and the name of the decedent's superior officer, the form contains the following question, "At the time of injury

which resulted in death, was officer in the performance of duties?'' Below this question are two blocks reading "yes" and "no", one of which is to be checked off by the political subdivision or Commonwealth agency. It is therefore clear that the regulation requires the Township to make an initial determination as to whether the decedent died in the performance of duties *or whether he or she died otherwise.* The refusal of the Township to complete this form is the subject of the present appeal and presents an issue of first impression for this Court to decide.

The Township has refused to complete the form because it maintains that Mr. Murphy was not killed in the performance of his duties. It is the Township's contention that by completing the form it is certifying not only that Mr. Murphy died (a fact not in dispute) but, in addition, it is also certifying that he died *while in the performance of his duties.* The Township takes the position that by completing the form it certifies that death occurred in the performance of duties and that this position is contrary to the Township's position in Mr. Murphy's workmen's compensation claim. No law has been cited, however, to indicate that certification of this form would estop the Township from defending a workmen's compensation claim.

Plaintiff argues that because of the question on the form relating to whether the decedent was performing duties at the time of death, the Township, by completing the form, certifies only that the decedent died, not that he died while performing his duties. Plaintiff thus reasons that completion of the form is a ministerial duty and that mandamus is a proper remedy where the Township has refused to complete the certification. Proceeding under this theory Plaintiff, after the Township notified her of its refusal to complete the form, filed a complaint in mandamus. The

Township filed preliminary objections in the nature of a demurrer and a motion to strike. While the preliminary objections were pending, on June 15, 1983, Plaintiff petitioned for an entry of peremptory judgment in mandamus. Prior to a hearing on the June 15, 1983 petition, the preliminary objections came before the trial court which, by order dated August 15, 1983, sustained the preliminary objection in the nature of demurrer and dismissed the complaint. This appeal ensued.

Our determination of whether Plaintiff's petition for mandamus was properly dismissed depends upon the construction of Section 1 of Act 101. The issue to be determined is whether Section 1 requires the Township to certify only the fact of death, or the fact of death *and* that death occurred during the performance of duties. The Township maintains that the word "such" appearing in the phrase "such death" can refer only to *death in the performance of duties,* rather than to the unmodified noun "death". According to Webster's Third New International Dictionary, 2283 (1966), the adjective "such" modifies "death" as "having a quality already or just specified" or as being "of the sort . . . previously indicated." While we cannot dispute the existence of the dictionary definition of "such", we do not ascribe to the legislature such a meticulous attention to dictionary definitions in every law that it passes. If the word "such", modifies the noun it precedes by importing to that noun qualities previously indicated, then we are in a quandary to explain the word "such" in the phrase "such political subdivision", which phrase appears in the very same sentence of the statute in question. The words "political subdivision", or a synonym for them, do not appear previously in the sentence. Therefore, it is our view that the legislature has used "such" in

the phrase "such death" as a synonym for the word "the" or "his" or "her", as in "the death", "his death", or "her death". Certainly we cannot say that the word "such" which appears twice in the same sentence means "such" as defined by Webster's Dictionary in one instance, but not in the other. Because the word "such" has generated an ambiguity, we resort to principles of statutory construction to aid in interpreting the law.

We are guided by Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(c), which sets forth matters which may be considered in ascertaining the intent of the legislature, including the following:

(1) The occasion and necessity for the statute.

. . . .

(6) The consequences of a particular interpretation.

. . . .

(8) Legislative and administrative interpretations of such statute.

Using these criteria as a guideline, we shall examine the two possible interpretations presented by the parties.

This Court has already recognized that Act 101 is "social legislation" and must, therefore, "be construed liberally in order to effectuate its beneficent purposes." *Seybold v. Department of General Services*, 75 Pa. Commonwealth Ct. 118, 122, 461 A.2d 353, 355 (1983). Moreover, the purpose of Act 101 can be ascertained from its official title which reads "An Act providing for the payment of death benefits to the surviving spouse or children or parents of firefighters, ambulance service or rescue squad members or law enforcement officers killed in the performance of their

duties.'' Logic dictates that the legislature wanted to make available death benefits for the immediate families of those firefighters killed in the performance of their duties. A formal application for such benefits is, of course, a necessity for carrying out such a purpose. It is also apparent that the two adverse parties with respect to a claim for death benefits will be the decedent's family and the political subdivision or Commonwealth agency. The construction of the statute urged by the Township would permit one of the adverse parties as fact finder to make an initial legal determination of eligibility. This concept of one body functioning as both judge and litigant, without specific statutory authority enabling it to do so, is repugnant to due process. The Township makes no allegation, nor is there any evidence, that a separate adjudicatory process is either required or provided for at the level of the political subdivision (Township here) or Commonwealth agency. We realize that this "commingling of functions" problem could be cured by an *appeal* under the Local Agency Law to the court of common pleas. *See* 2 Pa. C. S. §§551-555, §§751-754. Nonetheless, we recognize that a multistep appeal process has the effect of "weeding out" and "wearing down" legitimate claimants. It is certainly possible that the uneducated or the nonpersistent claimant might never carry the process further than the initial determination and where that determination is made by a body with an interest in the outcome the effect may be to hinder the remedial and beneficent purposes of Act 101.

Plaintiff's construction of the statute, however, appears more in keeping with its remedial nature. Under Plaintiff's theory the Township need only certify that a death occurred. It is difficult to imagine that this fact would be in dispute. The issue of wheth-

er death was during the performance of duties is then relegated initially to the Bureau pursuant to 4 Pa. Code §89.5 and the Bureau's determination may then be appealed and is subject to a due process hearing before a hearing examiner. *See* 4 Pa. Code §§89.21-89.35. It is our view that this construction of the statute is more likely to effectuate the purpose of Act 101.

. We now consider the specific consequences which would result if the Township's position is adopted. The Township maintains that because it must determine whether death occurred in the performance of duties, discretion is involved in its act and, thus, mandamus will not lie. It argues, in addition, that Plaintiff's remedy for a situation where the Township refuses to complete the form is to appeal to common pleas court pursuant to Section 752 of the Local Agency Law, 2 Pa. C. S. §752. We must agree that a decision as to whether death occurred in the performance of duties would require a judgment determination and would not be an appropriate situation for mandamus. But, a certification of the fact of death itself requires no discretion and would be appropriate for a mandamus action. The obvious consequence of the Township's position is that it ignores the practical reality that a specific agency structure within DGS, governed by explicit and detailed regulations, already exists to handle claims of eligibility for death benefits. Under Plaintiff's theory, however, because the Township must only certify the fact of death, all claims would go directly from the Township to the Bureau and all appeals, if taken, would be to the DGS hearing examiner. Thus, the existing agency structure would be utilized. We, therefore, believe that when the consequences of each interpretation are examined, Plaintiff's argument is the better one.

Next, we consider the administrative interpretation of the statute. DGS has promulgated regulations implementing the process by which claims for death benefits are to be settled.[1] Among the regulations is 4 Pa. Code §89.11 which promulgated the Report of Death form. It is apparent from this form that DGS has taken the position that Section 1 of Act 101 provides that the political subdivision or Commonwealth agency must certify only the fact of death. "[C]onstruction of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such con-

---

[1] We find the Township's argument that DGS's authority to promulgate regulations is questionable to be totally unsupported and completely without merit. DGS has enacted its regulations pursuant to Section 2404.1 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §634.1, *added by* Section 1 of the Act of January 27, 1966, P.L. (1965) 1624. Section 2404.1 of the Administrative Code of 1929 states in pertinent part:

The Secretary of Property and Supplies, ex officio, is hereby authorized and his duty shall be to transact business as a licensed insurance broker for the purpose of contracting all insurance and surety bonds for any department, board, agency or commission of this Commonwealth and for the General State Authority, the State Public School Building Authority or any other State authority or commission created by law.

Thus, the responsibility for transacting business to contract all insurance for Commonwealth agencies rests with the Secretary of DGS (formerly termed the Secretary of Property and Supplies). Part of the administrative scheme the Secretary has established pursuant to this duty is the Bureau of Risk and Insurance Management (Bureau) whose function it is to process death benefit claims. DGS has also promulgated regulations establishing a due process hearing procedure for appeal from Bureau determinations. 4 Pa. Code §§89.21-89.35. It is apparent when examining Section 2404.1 of the Administrative Code of 1929 and Section 1 of Act 101 in *pari materia* that the Secretary of DGS has acted, pursuant to a grant of statutory authority, to set up an administrative process to facilitate the death benefit claims.

struction is erroneous." *Spicer v. Department of Public Welfare,* 58 Pa. Commonwealth Ct. 558, 560, 428 A.2d 1008, 1009 (1981) (quoting *Longo Liquor License Case,* 183 Pa. Superior Ct. 504, 508, 132 A.2d 899, 901 (1957)). Plaintiff's position parallels that taken by DGS. The Township's position not only is different than that taken by DGS but also would appear to require holding 4 Pa. Code §89.8 (authorizing the Bureau to evaluate claims) and portions of 4 Pa. Code §§89.7 and 89.11 (including portions of the forms promulgated thereunder) invalid. On one occasion we did find a Bureau regulation promulgated by DGS unreasonable. *See Seybold.* But where the Bureau's regulations are consistent with and support the beneficent purposes of Act 101 we will not do so. Thus, in *Seybold,* although we held unreasonable a regulation which limited eligibility for benefits, finding that the regulation eliminated an eligibility which the statute conferred, we did not find DGS's general administrative scheme unreasonable. To the contrary, in *Seybold* we remanded to DGS for further proceedings. In the instant case the regulations under consideration track the legislation and in no way impede its beneficent intent. The regulations establish a process for review of claims and provide for a due process hearing of appeals from the Bureau's decisions on eligibility. We perceive no way in which this structure restricts Act 101's conferring of eligibility or its beneficent purpose. Where interpretative regulations track the statute they seek to interpret, they are valid. *Pennsylvania Association of Life Underwriters v. Department of Insurance,* 29 Pa. Commonwealth Ct. 459, 463, 371 A.2d 564, 566 (1977) *aff'd per curiam,* 482 Pa. 330, 393 A.2d 1131 (1978). We thus decline to adopt the Township's position that the regulations should be held invalid.

It is well settled that mandamus is an extraordinary writ and when a trial court dismisses a petition for mandamus this Court may not disturb that determination unless it finds an abuse of discretion or an error of law. *Carino v. Board of Commissioners, County of Armstrong,* 79 Pa. Commonwealth Ct. 242, 468 A.2d 1201 (1983). Moreover, mandamus requires the party seeking it to demonstrate a clear legal right to the requested relief and a corresponding duty on the part of the other party. *Id.; Erie Firefighters Local No. 293 v. Gardner,* 406 Pa. 395, 178 A.2d 691 (1962). Mandamus is inappropriate where there is an adequate remedy at law. *Rylke v. Portage Area School District,* 473 Pa. 481, 375 A.2d 692 (1977). In the present case the trial judge in determining that the Township must certify that death occurred in the performance of duties erred as a matter of law. We hold that Section 1 of Act 101 requires only that the political subdivision or Commonwealth agency certify the fact of death itself. The statute contains the words *"shall* submit certification." (Emphasis added.) We, therefore, hold that certification is mandatory. Plaintiff has thus demonstrated both her right and the Township's duty. Next, there is no issue of fact to be resolved because the only issue is whether the individual has died. Finally, Plaintiff has no other remedy because an initial determination by the Bureau is conditioned upon its receipt of the Report of Death form. *See* 4 Pa. Code §89.7 and §89.8. We therefore hold that the requirements for mandamus have been met.

In *Biega v. Aliquippa School District,* 15 D. & C. 3d 619 (1980) the trial court held that mandamus was proper to compel a local agency which conducted a hearing on the suspension of certain school teachers to issue an adjudication. The trial court did not attempt to dictate the *result* of the adjudication, but

502

merely directed that the adjudication itself must be issued. The instant case is similar. The Township must certify the death; it is not required to certify that death was during the performance of duties, but simply to certify that the death occurred. This it may not refuse to do. Thus, mandamus will lie and the order of the trial court is reversed.[2]

### ORDER

Now, April 2, 1985, the order of the Court of Common Pleas of Montgomery County, No. 83-04339, dated August 15, 1983, is hereby reversed. This case is remanded to the said Court for the issuance of an order to the Township consistent with this opinion.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[2] Having determined that a hearing lies with DGS and not the court of common pleas, we reject the Township's contention that Plaintiff's mandamus action was an attempted substitute for its failure to *appeal* to common pleas court within 30 days of the time the Township notified Plaintiff of its refusal to complete the Report of Death form.