528 A.2d 999

Marie L. Seybold, Petitioner *v.* Commonwealth of Pennsylvania, Department of General Services, Respondent.

Argued October 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Ronald P. Koerner, Gatz, Cohen, Segal & Koerner,* for petitioner.

*David A. Fitzsimons,* Assistant Counsel, with him, *Thomas M. Devlin,* Assistant Counsel, and *Anthony P. Krzywicki,* Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, December 15, 1986:

Marie L. Seybold (Petitioner) has petitioned for review of an order of the Department of General Services (Department) affirming the decision of the Bureau of Risks and Insurance Management denying the Petitioner's claim for a $25,000 death benefit under Section 1 of the Act of June 26, 1976 (Act), P.L. 424, *as amended,* 53 P.S. §891. The Petitioner is the widow of Charles H. Seybold, a former fireman in the City of Pittsburgh.

This matter is now before our Court for the second time, *see Seybold v. Department of General Services,* 75 Pa. Commonwealth Ct. 118, 461 A.2d 353 (1983), even though the facts are relatively uncomplicated. On February 1, 1976, Mr. Seybold was on duty when an alarm was sounded. He donned boots, heavy protective clothing and a helmet. He drove a pumper truck one mile to the Carlton House where the alarm had been triggered. Mr. Seybold then carried approximately 47 pounds of equipment to the elevator. He rode up to the 9th floor and proceeded at a "fast walk" up the stairs to the 10th floor carrying the equipment. There was then some smoke on the 10th floor, described by one witness as "cooking smoke." He remained in the hall on the 10th floor for approximately 10 minutes and then left because the situation was under control. Mr. Seybold returned to the fire station where, within approximately one-half hour, he suffered a heart attack and died.

The Petitioner filed a claim for death benefits pursuant to Section 1 of the Act, which provides that in the event a firefighter is killed in the performance of his duties, the Commonwealth of Pennsylvania shall pay to the surviving spouse the sum of $25,000. A hearing was

held on May 14, 1980. Mr. Seybold's superior, Capt. Richard G. Bilby, the only witness called concerning the circumstances at the scene of the fire, testified that the smoke in the hall on the 10th floor was "cooking smoke", and that the decedent "would . . . have inhaled smoke . . ." during a period of approximately ten minutes. Conflicting medical testimony was also received. The Petitioner's witness, Dr. Joshua A. Perper, who performed an autopsy on the decedent, testified by deposition that the decedent's activities in connection with the alarm on February 1, 1976, with the physical and mental stress involved, coupled with decedent's cardiovascular condition, triggered and caused the decedent's fatal heart attack. The Department's witness, Dr. George R. Moffitt, a cardiologist, opined that the decedent's death was the result of a "slowly progressive disease process that had built up to a climax resulting in cardiac death." He also stated that "If there is enough smoke in a combustive atmosphere and there are large amounts of carbon monoxide, then there is no question that this could be a cause of death."

The hearing examiner wrote that he found Dr. Moffitt's opinion "more probative on the relationship that the events Mr. Seybold experienced at the Carlton House had on his death . . ." and denied the claim, concluding that the decedent was not "killed" as that term was defined in 4 Pa. Code §89.1.[1]

---

[1] 4 Pa. Code §89.1 defines "killed" as:
Death as the direct and proximate result of a wound or other condition of the body caused by external force, including injuries by bullets; explosives; sharp instruments; blunt objects or other physical blows; chemicals; electricity; climatic conditions; including gasses, heat, and lack of air; infectious diseases; radiation; and bacteria; but excluding stress and strain and diseases which arise merely out of the general performance of duty.

On Petitioner's first appeal to this Court we held that the Act providing death benefits for firefighters must be construed liberally in order to effectuate its beneficent purposes and that the restrictive definition of "killed" in 4 Pa. Code §89.1 unreasonably imposed limitations on the eligibility language of the Act and should not be applied. We reversed the decision of the Department which denied the claim and remanded the case for proceedings consistent with our opinion.

On remand, the hearing officer reviewed the record and issued a well-reasoned decision in which he made 39 findings of facts, including findings that Mr. Seybold died of arteriosclerotic cardiovascular disease; that Mr. Seybold did not experiences a myocardial infarction immediately prior to his death; and that according to Dr. Moffitt, Mr. Seybold's death was the culmination of his slow, progressive heart disease. The hearing officer then wrote a thorough explanation for his conclusion that "[t]he decedent was not killed in the performance of his duty."

The Petitioner on appeal here raises only the issue of whether there is substantial evidence to support the hearing officer's findings of fact.[2]

It is the hearing examiner who must resolve evidentiary conflicts, and it is not the function of the reviewing court to judge the weight and credibility of evidence. *Palmer v. Department of Public Welfare,* 5 Pa. Commonwealth Ct. 407, 291 A.2d 313 (1972). Substantial evidence is such relevant evidence as a reasonable mind

---

[2] Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, the procedures of the agency have been violated, or whether any necessary findings of fact made by the agency are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. *See Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

might accept as adequate to support a conclusion. *Rabinowitz v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 51, 324 A.2d 825 (1974). The presence of conflicting evidence does not mean that there is not "substantial evidence" to support the agency's findings. *Criswell v. Unemployment Compensation Board of Review*, 38 Pa. Commonwealth Ct. 444, 393 A.2d 1071 (1978).

Here, the hearing examiner considered the conflicting medical testimony and wrote that he found the testimony of Dr. Moffitt to be more probative on the relationship between Mr. Seybold's death and the events he experienced at the Carlton House than Dr. Perper's testimony. He explained that Dr. Moffitt testified that there was no myocardial infarction which might indicate a sequence of exertional activity, myocardial infarction and subsequent death due to myocardial infarction.

The hearing examiner wrote that:

According to Dr. Moffitt, if the physical exertion or smoke did cause the death of Mr. Seybold, the decedent would have suffered the consequences of a decrease in the oxygen supply to the heart within seconds or minutes of the actual stress or the smoke inhalation. (Moffitt N.T. pp. 38, 39). The delay from the time of exposure to the smoke and physical exertion to the time of death is indicative of death caused by arteriosclerosis [sic] rather than death from myocardial infarction. (Moffitt N.T. p. 53.)

At the time of his death, Mr. Seybold was back at the firehouse drinking a cup of coffee, approximately thirty minutes after leaving the scene of the fire. At that point in time any effect which the smoke, physical exertion or mental stress may have had on the supply of oxygen to the heart had passed. Death at that point was

the culmination of the slowly progressive heart disease, which climaxed in cardiac death. (Moffitt N.T. p. 39).

The hearing examiner considered the testimony and evidence presented by both sides. He wrote:

. . . I remain unconvinced that Mr. Charles H. Seybold's death was related to the performance of his duties as a fireman. In so finding, I am not disregarding the fact that there was some physical exertion, smoke and possibly mental stress at the scene of the fire. But, Mr. Seybold did not collapse at the scene of the fire. He collapsed within 30 minutes *after* he returned from the fire. (Emphasis in original.)

The hearing examiner's findings of fact, therefore, are supported by substantial evidence.

Accordingly, we affirm the order of the Department.

ORDER

NOW, December 15, 1986, the order of the Department of General Services, dated January 4, 1985, is affirmed.