540 A.2d 1015

Joyce E. Crouse, Petitioner *v*. Commonwealth of Pennsylvania, Department of General Services and Bureau of Risk and Insurance Management, Respondent.

Argued November 19, 1987, before Judges DOYLE and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*D. Scott Eaby, Ward & Eaby,* for petitioner.

*Michael D. Reed,* Chief of Litigation, with him, *P. Alan Zulick,* Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, May 6, 1988:

Joyce E. Crouse (petitioner) petitions for review of an order of the Department of General Services (Department) affirming the decision of the Bureau of Risk and Insurance Management which denied her claim for a $25,000.00 death benefit under Section 1 of the Act of June 26, 1976 (Act 101), P.L. 424, *as amended,* 53 P.S. §891. The petitioner is the surviving spouse of G. Michael Crouse (decedent), a former volunteer fireman with the Reinholds Fire Company.

The parties entered into a stipulation of non-medical facts. In addition, based upon the Department hearing examiner's examination of the depositions of three medical experts and a transcript of hearings held before a workmen's compensation referee, certain medical findings were made. These findings can be summarized as follows.

The decedent was first diagnosed in 1970 as having coronary artery heart disease after he suffered chest discomfort diagnosed as a myocardial infarction. In 1976 the decedent suffered a second myocardial infarction.

On November 4, 1981, the decedent responded to a fire call. While putting on his gear he suffered an acute myocardial infarction for which he was hospitalized until November 20, 1981. He was diagnosed as having suffered an extensive interior infarction complicated by

mild heart failure and ventricular arrhythmia with frequent runs of ventricular tachycardia. On February 17, 1982, the decedent was hospitalized after a stress test produced ventricular tachycardia. A catheterization performed on February 22, 1982, demonstrated significant blockage in three arteries as well as the presence of an aneurysm in the area of his infarction.

On March 29, 1982, the decedent responded to a fire call but consistent with his curtailed activities since November of 1981, remained at the station house. When the other firemen returned from the fire the decedent was slumped in a chair. He was pronounced dead shortly thereafter.

The petitioner filed a claim for death benefits under Section 1 of Act 101. Section 3 of the Amendatory Act of October 16, 1981, P. L. 295 provides in pertinent part:

. . . retroactive to January 1, 1976, [the original Act] . . . shall be applicable to the deaths of all fire-fighters . . . dying on and after said date *as the direct result of injuries sustained in the performance of their duties,* regardless of the date when such injuries occurred. (Emphasis added.)

The hearing examiner made the following pertinent conclusions of law:

2. G. Michael Crouse died of ventricular or arrhythmia fibrillation which was the direct result of the myocardial infarction which he suffered on November 4, 1981.

3. Decedent suffered a myocardial infarction on November 4, 1981 in the course of the normal evaluation [sic][1] of severe progressive coronary heart disease. (Footnote added.)

4. Mr. Crouse's death on March 29, 1982 was not caused by the activities engaged in by decedent on that date or on November 4, 1981.

---

[1] Presumably, the word intended was "evolution."

5. G. Michael Crouse was not killed in the performance of his duties in that the cause of death did not arise from the performance of his duties as a firefighter.

Accordingly, the petitioner's claim for benefits was denied.

The petitioner argues before this. Court that the hearing examiner committed an error of law in his interpretation and application of the causation requirements of Act 101.[2] We disagree.

Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or whether any necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Our thorough review of the hearing examiner's adjudication reveals that he properly considered the causation requirements of the Act.

First, inasmuch as Act 101 provides for the payment of a death benefit, the threshold question is whether a death has in fact occurred. The fact that a death has occurred is certified to the Bureau by the political subdivision or the Commonwealth agency for which the firefighter performed duties pursuant to Section 1 of Act 101. This Court has determined that this is a mandatory ministerial duty. *Murphy v. Township of Abington,* 88 Pa. Commonwealth Ct. 491, 490 A.2d 483 (1985). In the case before us West Cocalico Township certified the decedent's death to the Bureau.

---

[2] Although petitioner's argument is not clearly articulated, we have extrapolated from her brief at least three separate arguments which unfortunately are internally inconsistent. Rather than attempt to separate and clarify her arguments we will address her concerns by thoroughly reviewing the hearing examiner's adjudication.

Second, Act 101 requires that the decedent must have suffered an injury. We find that the hearing examiner properly determined that the decedent suffered an injury within the meaning of the Act on November 4, 1981. The decedent suffered a myocardial infarction on that date. In *Seybold v. Department of General Services,* 75 Pa. Commonwealth Ct. 118, 461 A.2d 353 (1983), *(Seybold I),* this Court examined the Bureau's definition of "killed" as set forth in its regulation at 4 Pa. Code §89.1.[3] That regulation defines "killed" as:

Death as the direct and proximate result of a wound or other condition of the body caused by external force, including injuries by bullets; explosives; sharp instruments, blunt objects or other physical blows; chemicals; electricity; climatic conditions, including gases, heat, and lack of air; infectious diseases; radiation; and bacteria; but excluding stress and strain and diseases which arise merely out of the general performance of duty.

We held that "it is unreasonable to interpret the eligibility language of [Act 101], *as amended,* to call for the limitations imposed by the Department in its Regulation 89.1" *Seybold I,* 75 Pa. Commonwealth Ct. at 125, 461 A.2d at 356. The conclusion that the November 4, 1981 myocardial infarction in the case before us is an injury within the meaning of Act 101 is clearly consistent with *Seybold I* and with the statute.

Next we turn to an examination of the causation requirements in the Act. We find that the only logical reading of Act 101 requires that there be a causal connection between the injury suffered by the firefighter

---

[3] The word "killed" as defined in the regulation relates to Section 1 of the Act which provides the $25,000 death benefit to firefighters "killed in the performance of [their] duties."

and his subsequent death. However, in keeping with a liberal interpretation of the statute as set forth in *Seybold I,* we find that the death need not immediately follow this injury. As in the case before us, the firefighter's death occurred over four months following the injury suffered *i.e.,* the November 4, 1981 myocardial infarction. Yet the hearing examiner concluded that the earlier myocardial infarction caused the decedent's death on March 29, 1982 due to the damage that the November 4, 1981 injury caused to his heart. Accordingly, the first element of causation has been satisfied in this case. That is, the firefighter's death was a direct result of an injury.

Finally, we turn to an interpretation of the phrase "sustained in the performance of their duties." We find that this phrase must be read to create a second causal requirement in Act 101, *i.e.,* that the injury must be suffered as a result of the duties performed by the firefighter. The petitioner would have us interpret this portion of the statute to mean that the injury need only occur *while* the firefighter was in the performance of his duties. We cannot agree with this interpretation for two reasons.

First, such an interpretation would require us to read a word into the statute which the legislature did not include. That is, the petitioner would have us interpret Section 3 of the Act as if it read, "deaths of all firefighters . . . dying . . . as the direct result of injuries sustained while in the performance of their duties." We do not find that this is a proper instance for the application of Section 3 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1923(c) which provides, "Words and phrases which may be necessary to the proper interpretation of a statute which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof."

The scope and operation of Act 101 could be greatly affected by the addition of the word "while" to Section 3 as the petitioner suggests. It would remove any causal relationship requirement between the injury suffered by a firefighter and the duties he was performing at the time the injury was suffered.

The definition of "performance of dutes" provided by 4 Pa. Code §89.1 includes:

> Any actions which a fireman or law enforcement officer is obligated or authorized by rule, regulation, condition of employment or service, or law to perform, including those ceremonial functions to which he is assigned or for which he is compensated by the Commonwealth or the political subdivision he serves.

Under the petitioner's proposed construction, the surviving spouse of a terminally ill firefighter would be eligible for death benefits under the fortuitous circumstance that he was sweeping the fire station floor at the time of his death; a death which was imminent regardless of his performance of that duty. This would be an absurd result, one that the legislature could not have intended. Accordingly, we find that the hearing examiner did not err in requiring that there be a causal connection between the decedent's injury and the performance of his duties as a firefighter.

The petitioner also argues that the hearing examiner improperly relied upon the medical testimony of George R. Moffitt, M.D. inasmuch as his testimony is not competent and cannot support the hearing examiner's findings. We disagree.

The petitioner argues that Dr. Moffitt's opinion was formulated based upon his review of an incomplete record. Specifically, she argues that his review of the circumstances surrounding the decedent's death did not include a review of the testimony of witnesses present

at the firehall on November 4, 1981, which testimony was presented to a workmen's compensation referee. The petitioner argues that this is a crucial omission in Dr. Moffitt's review of this case inasmuch as he opined that the decedent's November 4, 1981 myocardial infarction was caused by the natural progression of his coronary artery disease and not the stress of responding to the fire call.

We cannot agree that Dr. Moffitt's failure to review the testimony of the non-medical witnesses before the workmen's compensation referee renders his testimony or opinion incompetent. We view this simply as one of the factors which the factfinder considers when assigning weight to the testimony of a witness in his effort to determine credibility. The factfinder in this case, *i.e.,* the hearing examiner, was aware that Dr. Moffitt did not review the testimony in question. Nonetheless, he found Dr. Moffitt's testimony to be more credible than that of the other two physicians who gave opinions in this case. The hearing examiner acted wholly within his province in assessing credibility and we cannot disturb that assessment on review. *Seybold v. Department of General Services,* 107 Pa. Commonwealth Ct. 349, 528 A.2d 999 (1986) (*Seybold II*), *Palmer v. Department of Public Welfare,* 5 Pa. Commonwealth Ct. 407, 291 A.2d 313 (1972).

Based on the foregoing, we affirm the order of the Department of General Services.

## ORDER

Now, May 6, 1988, the order of the Department of General Services dated June 25, 1986, is hereby affirmed.