542 A.2d 609

Isabel M. Dunn, Petitioner *v.* Department of General Services, Respondent.

Argued March 22, 1988, before Judges Craig, Doyle and Palladino, sitting as a panel of three.

*Henry H. Wallace*, with him, *Maureen Dunn Harvey, Wallace, Chapas & Associates*, for petitioner.

*David A. Fitzsimons*, Assistant Counsel, with him, *Michael D. Reed*, Chief of Litigation, *William W. Warren, Jr.*, Chief Counsel, for respondent.

Opinion by Judge Palladino, June 3, 1988:

Isabel M. Dunn (Petitioner) has petitioned for review of an order of the Department of General Services

(Department) affirming the decision of the Bureau of Risk and Insurance Management (Bureau) denying Petitioner's claim for a $25,000 death benefit. The benefit is payable to the surviving spouse of a law enforcement officer, ambulance service or rescue squad member or fire fighter killed in the performance of his duties. Section 1 of the Act of June 26, 1976 (Act 101), P.L. 424, *as amended,* 53 P.S. §891. The benefit was sought following the death of Petitioner's husband, State Police Commissioner Daniel F. Dunn.

Commissioner Dunn suffered a fatal heart attack on May 16, 1985, shortly after conducting a tour of the Pennsylvania State Police Academy in Hershey, Pennsylvania. The State Police filed a claim, on behalf of Petitioner, for the death benefit provided for in Act 101. The Bureau denied the claim, concluding that Commissioner Dunn's "death did not occur in the performance of duty." Upon Petitioner's appeal to the Department, a hearing examiner was appointed, and the case was presented with a stipulation of facts, depositions of physicians and affidavits. The Department hearing examiner concluded that "Commissioner Dunn was not killed in the performance of his duties as State Police Commissioner, since the cause of death did not arise from the performance of those duties." Conclusion of law No. 2. Petitioner has petitioned for review.[1] Petitioner's arguments on appeal are as follows: 1) the hearing examiner erroneously applied the "unusual strain doctrine" in determining eligibility under Act 101; 2) the hearing examiner's decision is not supported by substantial evidence; 3) the Department is bound by the finding of the

---

[1] Our scope of review is confined to determining whether findings are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Seybold v. Department of General Services,* 107 Pa. Commonwealth Ct. 349, 528 A.2d 999 (1986) *(Seybold II).*

Workmen's Compensation Bureau that Commissioner Dunn's death was work related; and 4) the Department and Bureau were required to award the benefit because the Pennsylvania State Police had certified that Commissioner Dunn's death occurred as a result of injuries sustained in the performance of duty. We shall address these issues in the order stated.

Petitioner first asserts the hearing examiner erroneously applied the "unusual strain doctrine" in determining eligibility under Act 101. Petitioner argues that the unusual strain doctrine developed in heart attack cases under the Workmen's Compensation Law[2] (Law), and that the doctrine was eliminated by the legislature when it amended the Law. Assuming, arguendo, that Petitioner's statement of the Law is correct, we fail to see the relevance of this argument. Whatever the requirements of the Law, Act 101 clearly provides that there must be a causal connection between the death and the duty. Section 3 of the Act of October 16, 1981, P.L. 295 (Amending Act) states, in part: "This act . . . shall be applicable to the deaths of all firefighters, ambulance service or rescue squad members and law enforcement personnel dying as the direct result of injuries sustained in the performance of their duties. . . ."

A heart attack can be an "injury" under Act 101. *Crouse v. Department of General Services*, 116 Pa. Commonwealth Ct. 43, 540 A.2d 1015 (1988). However, an injury under Act 101 is not compensable where a causal connection has not been established. *Township of Ross v. Department of General Services*, 116 Pa. Commonwealth Ct. 532, 542 A.2d 613 (1988); *Crouse;* Section 3 of Act 101. The issue, then, is whether the hearing examiner's finding that a causal connection had not been established is supported by substantial evidence. This is Petitioner's next argument.

---

[2] The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1601.1.

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Township of Ross.* Our review of the record establishes that the hearing examiner's finding that Commissioner Dunn was not killed in the performance of his duties is supported by substantial evidence.

It is not disputed that Commissioner Dunn suffered three heart attacks prior to the fatal one on May 16, 1985, nor that his heart was damaged by the three earlier attacks. George R. Moffitt, M.D., was deposed and, based on his review of information given him by the Bureau,[3] stated that coronary arteriosclerosis was the cause of death and further stated, with a reasonable degree of medical certainty, that "work stresses did not precipitate his death. And that they would not have significantly influenced the progression of coronary artery disease." Moffitt deposition at 8-10.

Subsequent to his deposition, Dr. Moffitt reviewed additional evidence, following which he sent a letter which states:

> I reviewed the additional affidavit of Captain Edgar Richards and Walter F. Junkins.
>
> These descriptions, particularly that of Captain Richards, delineates [sic] in detail the tour of the Police Academy by Commissioner Dunn and the guest, General Cromartie. After review of this document, I find nothing in it to substantiate any activity that Commissioner Dunn performed that would have precipitated cardiac sudden death that would not have occurred otherwise.

---

[3] Dr. Moffitt reviewed an investigative report of the Pennsylvania State Police, Commissioner Dunn's death certificate and correspondence from Commissioner Dunn's attending physician, Donald C. Durbeck, M.D.

> Mr. Dunn's death was the result of far advanced, well documented coronary artery disease and was due to the natural progression of the disease process and not precipitated by any activity occurring immediately prior to his death.

Although conflicting medical evidence was presented, the deposition and letter of Dr. Moffitt constitute substantial evidence for the hearing examiner's decision.

Petitioner next argues that the Department is bound by the finding of the Workmen's Compensation Bureau that Commissioner Dunn's death was work-related. We cannot agree. Act 101 is in no way related to the Law; Act 101 contains its own eligibility requirements and there is absolutely no indication that the legislature intended the Law to impact upon Act 101. Accordingly, we will not burden either the Workmen's Compensation Bureau or the Department with the determinations made by the other. *Township of Ross.*

Finally, Petitioner argues that the Department was required to award the benefit because the Pennsylvania State Police had certified that Commissioner Dunn's death occurred as a result of an injury sustained in the performance of duty. This argument appears to stem from confusion concerning the procedure in Act 101 cases. In *Lang v. County of Delaware,* 88 Pa. Commonwealth Ct. 452, 457 n. 1, 490 A.2d 20, 24 n. 1 (1985), we stated that if there is a factual dispute as to whether death occurred during the performance of duties, the issue is subject to a due process hearing before the Department. The procedure discussed there, however, was based on the assumption that a political subdivision would contest whether death occurred during the performance of duties. Such a contest was likely prior to the amendment to Act 101 made in 1981. The amendment, however, makes it *unlikely* that a political subdivision will contest the performance of duty issue. We

stated in *Lang* that the following payment procedure was in place following the 1981 amendment:[4] "(1) the employer political subdivision certifies to the Commonwealth the occurrence of a death, (2) the Commonwealth pays $25,000 to the political subdivision, and (3) within five days thereafter, the political subdivision forwards that payment to the survivor entitled to it." *Id.* at 457, 490 A.2d at 24 (footnote omitted). We further held in *Lang* that the political subdivision was not obligated to disburse any funds until it had received payment from the Commonwealth. The effect of the amendment, and our interpretation, is to negate any risk on the part of the political subdivision.

Thus, the present scenario is the one we are most likely to face. Because the political subdivision will be bearing no fiscal risk, it is unlikely a contest will arise at the initial stage of a claim (*i.e.*, between survivor and political subdivision). With this scenario in mind, Petitioner's argument becomes abundantly clear. The political subdivision was not a protestant in this proceeding. Instead, the Bureau became a protestant and also the initial adjudicator of the claim it was protesting. As we noted in *Murphy v. Township of Abington*, 88 Pa. Commonwealth Ct. 491, 497, 490 A.2d 483, 486 (1985), this sort of commingling of the functions of judge and litigant is repugnant to due process.

Ironically, the situation we were concerned with in *Murphy* was one where the political subdivision, not the Bureau, had assumed the roles of both litigator and adjudicator. *Id.* at 497, 490 A.2d at 486. In that case, the political subdivision refused to certify that death oc-

---

[4] *Lang* also held that this payment procedure was retroactive to the effective date of the original act (January 1, 1976). *Id.* at 457, 490 A.2d at 24.

curred in the performance of duty,[5] although it was willing to certify that the death itself had occurred. We resolved the problem by adopting a procedure providing that the political subdivision is obligated to certify only that a death occurred, not that the death occurred in the performance of duties. *Id*. We thus avoided the unsavory process of allowing a political subdivision, which we assumed would be the adverse party, to make an initial determination of eligibility. Unfortunately, we failed to recognize that, under Act 101 as amended, it is unlikely that the political subdivision will be the adverse party. Instead, as noted earlier, the Bureau is likely to become the only entity contesting eligibility.

Thus, we are faced with the question of whether the procedure utilized in the present case comports with the legislative intent. As noted earlier, the Department hearing examiner resolved the factual dispute by finding there was no causal connection, and that finding is supported by substantial evidence. However, resolution of that issue does not answer the question now presented, which is whether the Bureau may, *sua sponte,* raise factual disputes which were not presented to it by the political subdivision or the survivor. For the reasons which follow, we hold that it may.

Our decision is guided by *Murphy,* or, more exactly, the differences between *Murphy* and the present case. A political subdivision's refusal to provide requested certification would have the effect of preventing a survivor from obtaining a hearing; the case would end, in many instances, with the political subdivision's refusal. We noted in *Murphy* that an appeal from such a refusal *could* be taken to the court of common pleas, and that

---

[5] The political subdivision's refusal was based on its assertion that it was contesting the performance of duty issue in the decedent's workmen's compensation proceeding.

such an appeal would cure the commingling problem. *Id.* at 497, 490 A.2d at 486. However, such an appeal process, because it is not explicitly provided for in Act 101, would tend to deter claimants from pursuing a refusal, and would thereby hinder the purpose of Act 101. Instead of creating a burdensome multistep appeal process, we held that a political subdivision was to certify the death and then pursue factual disputes through the appeal process established pursuant to Act 101, *i.e.,* through the Bureau and Department.

In the present type of case, an adverse determination by the Bureau need not end the case. Instead, as we noted in *Murphy,* an appeal process is already in place and may be utilized by the survivor. Upon appeal, the Department appoints a hearing examiner, a hearing is available, evidence is taken, and findings of fact and conclusions of law are set forth. The Department's determination is then appealable to this court. Regulations dealing with the appeal process have been promulgated at 4 Pa. Code §§89.1-89.35. These regulations, in conjunction with caselaw interpreting Act 101, have established an orderly process for review and have cured any commingling of functions problem. Thus, because there is an appeal process in place, we do not face the problem addressed in *Murphy.* As long as the Department's findings are supported by substantial evidence and there are no errors of law or violations of constitutional rights, we will not disturb the Department's decision.

Accordingly, the order of the Department is affirmed.

## ORDER

AND NOW, June 3, 1988, the order of the Department of General Services in the above-captioned matter is affirmed.