**SABATHIER v. BOARD OF TRUSTEES,
FIREMEN'S PENSION AND RELIEF
FUND FOR CITY OF NEW ORLEANS.**

No. 41348.

March 22, 1954.

Robert G. Hughes, New Orleans, for plaintiff-appellant.

Henry B. Curtis, Grady C. Durham, New Orleans, for appellee.

HAMITER, Justice.

Following the death of Chester D. Gleason, who was a Captain in the New Orleans Fire Department, Mrs. Ada Sabathier Gleason (his widow) applied to the Board of Trustees of the Firemen's Pension and Relief Fund for the City of New Orleans (to

which decedent had been contributing) for benefits under and pursuant to the provisions of LSA–R.S. Title 33, Section 2114, subd. A. This section, insofar as pertinent, recites: "If any member of the fire department, while responding to an alarm of fire or while working at or returning from a fire, or while in the act of performing any part of his duties as a fireman, is killed or receives injuries which result in his death within six months from the time the injuries are sustained, and leaves a widow, the widow shall be paid a pension in the sum of fifty per cent of his salary at the time of death as an annuity. The pension shall cease if the widow remarries. * *"

The application was denied, and Mrs. Gleason instituted this suit against the named Board. In the petition she alleged (among other things) that decedent was killed while working at a fire in the performance of his duties as a member of the New Orleans Fire Department, the death having resulted from excessive fumes, smoke, heat and the physical effort expended by him; and that at the time his salary was $286 per month. She demanded a pension award of $143 per month, payable from November 19, 1951 until her death or remarriage.

The defendant, in its answer, denied plaintiff's allegations as to the manner and cause of the death; and it prayed for a dismissal of the suit.

The district judge, after trial, rendered judgment in favor of the defendant, having concluded "that the deceased came to his death from natural causes and was neither 'killed' nor did he 'suffer injuries' from which he died" within the meaning of the above quoted statutory provisions. This appeal by plaintiff followed.

The record discloses that Chester D. Gleason, 57 years of age at the time of his death and who was survived by plaintiff and two minor children born of their marriage, had served continuously for 32 years as a member of the New Orleans Fire Department. While on duty during the afternoon of November 19, 1951 and apparently in good health (as testified by his widow and others with whom he worked), Captain Gleason, in response to a fire alarm, accompanied several of his associates to a burning house at No. 6216 Louisville Street in the City of New Orleans. On arrival he and two other firemen pulled from their fire truck approximately 350 feet of 2½-inch hose and then dragged it some 100 feet to the site of the blaze which was within the building. There he assumed the task of holding the hose nozzle and playing a stream of water on the fire, and while so engaged he collapsed. Whereupon, he was carried outside the burning building, away from the heat and smoke and into fresh air; but he expired within a period of fifteen minutes.

Subsequently, Dr. R. E. Gillaspie, assistant coroner of Orleans Parish, performed a post-mortem examination of Cap-

tain Gleason; and, with it as a basis, he issued a certificate in which the cause of death was recited as "Coronary atherosclerosis; myocardial hypertrophy". Diagnosed also by that physician were ailments described as "cirrhosis of the liver and generalized arteriosclerosis, moderate".

When asked during the trial whether decedent had been aware of his condition Dr. Gillaspie testified: "No, sir, I don't think he had actual knowledge of it, but I went into the case and found out that he had gone to the Veteran's Hospital in July, 1951 which was probably 3 or 4 months before his death and in getting the record from there we found that he had what is called Parkinson's Disease which manifests itself by shaking of the hands and legs and that is due to some vascular disease and the most common is artherosclerosis and arteriosclerosis. I don't believe he knew that, but it was certainly present before his death."

The medical testimony in the record (given by Dr. Gillaspie and Dr. Carl S. Nadler) is further to the effect that decedent's exertion in handling the hose and fighting the fire, along with the heart condition and diseased coronary blood vessels noted, could well have brought on the almost sudden death experienced.

In view of the facts outlined above we must hold that Captain Gleason was "killed" while working at a fire and in the act of performing his duties as a fireman, within the contemplation of the statutory provisions under consideration, and that his surviving widow is entitled to the pension which she seeks. Use of the phrase "is killed" in the statute does not disclose a legislative intent, as contended for by defendant, that for a pension to be awarded the death must occur solely from the application of violent external physical force to the body. Certainly, the Legislature did not expressly so restrict it. Moreover, "killed" is the general term for depriving of life (Webster's New International Dictionary, Second Edition); and, being such, it is often employed in describing death attributable to a cause not involving the external physical force just mentioned. Here it appears to be used in the sense of denoting sudden death of the member the efficient or a contributing cause of which is an accident occurring while he is engaged in the performance of his duties as a fireman, as distinguished from the member's death resulting after a substantial loss of time from accidental injuries so received by him.

Undeniably, the death of Captain Gleason was relatively sudden, he having died at the scene of the fire within fifteen minutes after his collapse. Furthermore, in our opinion, it was accidental, having been an immediate and a direct result of his exhausting efforts in fighting the blaze. Although he experienced at the time a heart

disorder, very likely his demise would not have taken place had he refrained from enduring the heat and smoke and from expending extraordinary energy in handling the hose. This activity, according to the medical testimony, accelerated or aggravated decedent's condition; it was a contributing, if not the efficient, cause of death.

Tending to support our above interpretation and conclusion is a decision by the Pennsylvania Superior Court in the case of Vernon v. Firemen's Pension Fund of Philadelphia, 160 Pa.Super. 617, 52 A.2d 199. Invoked therein were provisions of defendant's charter and by-laws which recited that the widow and dependent child of a member fireman (as were plaintiffs) shall be entitled to a pension if he was killed while in the discharge of his duty. The decedent had suddenly collapsed while fighting a grass fire in the course and scope of his employment, and he died within a very few minutes. According to an agreed stipulation his death was caused from heart failure due to his exertions at the fire and the conditions under which he was working. An award of the demanded pension was decreed.

The opinion in City of Fort Smith v. Hairston, 196 Ark. 1005, 120 S.W.2d 689, cited and relied on by the defendant, has been read with much interest. Assuming that the holding of that case conflicts with the view entertained herein by us, we are in no manner bound thereby.

For the reasons assigned the judgment appealed from is reversed and set aside and it is now ordered, adjudged and decreed that the defendant pay unto plaintiff a pension of $143 per month, from November 19, 1951 until her remarriage or death, and all costs of this suit.