**BOARD OF FIREMEN'S RELIEF AND RE-TIREMENT FUND TRUSTEES OF TEXARKANA, TEXAS, Appellant,**

**v.**

**Mrs. Joy RYAN et al., Appellees.**

**No. 10253.**

Court of Civil Appeals of Texas.

Austin.

Dec. 1, 1954.

Wm. V. Brown, Jr., Texarkana, for appellant.

John Ben Shepperd, Atty. Gen., Horace Wimberly, Asst. Atty. Gen., Kennedy & Levee, Texarkana, Looney, Clark & Moorhead, Charles D. Mathews, Austin, for appellees.

HUGHES, Justice.

This suit is brought by the Board of Firemen's Relief and Retirement Fund Trustees of Texarkana, Texas, to set aside an order of G. F. Williams, Firemen's Pension Commissioner, awarding Mrs. Joy Ryan, surviving widow of David Ryan, a deceased fireman, a widow's pension under the provisions of Art. 6243e, Vernon's Ann.Civ.St., Firemen's Relief Pension Fund Act.

The Pension Commissioner and Mrs. Ryan are appellees.

The order of the Commissioner, dated June 4, 1953, was as follows:

"Mrs. David (Joy) Ryan is entitled to a widow's pro rata part of pension, due to the death of her husband, David

Ryan, on May 11, 1952, which we have found (from the evidence presented to this office) to be as a consequence of the performance of his duties as a Fireman. This payment of pension to Mrs. Ryan to be retroactive to June 1, 1952."

The trial court found that the above order was "reasonably supported by substantial evidence on the record made in this Court" and rendered judgment sustaining the order and awarding Mrs. Ryan a monthly pension in accordance with the provisions of the Firemen's Relief Pension Fund Act.

David Ryan had been a member of the fire department of Texarkana for about eleven years prior to his death on May 11, 1952.

Prior to the fall of 1950 Mr. Ryan had been a strong, robust man of some 200 pounds weight who frequently hunted and fished. In October, 1950 Mr. Ryan was overcome by smoke while fighting the "casket factory fire" and in November of that year he was hospitalized for virus pneumonia. Following this illness Mr. Ryan's health declined, he lost weight, tired easily, suffered moderate hypertension and lessened his hunting and fishing activities.

On February 1, 1952, there was a large fire in Texarkana known as the "Mule Barn fire." Mr. Ryan helped fight this fire and while inside the burning barn was injured by a falling cross timber. The testimony of some of the eyewitnesses to this incident is summarized below:

*Frank L. Earhart*, city fireman: Mr. Earhart was on the hose with Ryan inside the burning building when the timber fell. The timber fell from a point where the roof was the highest, about fifteen feet in height and when it fell it struck both him and Ryan, knocking them to the ground. The timber had to be removed from their bodies, and he, Earhart, was led out of the building by the hand, while two men, one on each side, had to assist Ryan from the building.

*C. P. Birmingham*, a fire captain at the time but present Chief of the Texarkana Fire Department: Chief Birmingham was present at the fire and saw Earhart and Ryan inside the burning building on the hose line fighting the fire. He saw the timber falling and hollered to them to "look out," but they failed to hear him. The timber fell "like a tree," knocking them both down. He helped to remove the timber and helped Earhart out of the building. Ryan was removed by two men holding him up, one from each side, and was thereafter carried to the hospital. The timber which struck Ryan was four or five inches in diameter, which he thought was square in shape.

*Arthur Jordan*, city fireman: Mr. Jordan was present at the Mule Barn fire and saw Ryan inside the burning building fighting the fire. He saw the timber falling, it was a large timber some eight by ten inches in size. The timber fell from about ten to twelve feet in height, striking Ryan across the head and shoulders, knocking him down and he, Jordan, along with another man rushed into the building and helped to remove the timber from Ryan and helped to carry him out of the building. Ryan was staggering and addled, and when they got him out of the building they laid him down behind the fire truck, making a pillow for him with his bunking coat. Ryan was in pain, complaining of his head, and he examined the back of Ryan's head, and discovered a knot about the size of a golf ball at the base of the hair line. Mr. Jordan had his wife call an ambulance, and upon arrival of the ambulance, he helped to place Ryan in the ambulance for removal to the hospital.

*Winfred Owen*, a part owner of the Mule Barn: Mr. Owen was at the Mule Barn fire on February 1, 1952. He saw Ryan inside the barn on the hose line spraying water on the large beams used for roof support runners and as the roof burned these big timbers started falling and one of these large timbers fell on Ryan very hard and knocked him down; he ran in the building and assisted others in trying to pull Ryan from under the

heavy timbers. The heavy timber which fell was one used to support the roof of the barn and fell from a height of thirty or forty feet, injuring Ryan "pretty bad." After Ryan was carried out of the building an ambulance was called and Ryan was placed in the ambulance for removal to the hospital.

A barber testified that he observed a knot on the back of Mr. Ryan's head when cutting his hair about two weeks after the Mule Barn fire and also noticed the knot in March and May of 1952.

There is also evidence that subsequent to this fire Mr. Ryan suffered severe headaches, pains in the chest and nose bleed and was unable to work full time.

Mr. Ryan was discharged from the hospital on the day after the Mule Barn fire. He was readmitted to the hospital on April 22, 1952 for four days and re-admitted three days later and remained until his death on May 11.

It is appellant's contention, as reflected by its first two points, that there is no causal connection between the injuries received by Mr. Ryan while fighting the Mule Barn fire and his death, the principal basis for which is the testimony of Dr. Kenneth E. McIntyre.

Dr. McIntyre who had previously treated Mr. Ryan for monoxide poisoning attended Mr. Ryan in his last illness and attributed his death to a cerebral hemorrhage as a "manifestation of his long-standing vascular disease and was unrelated to injury." A death certificate was executed and filed by Dr. McIntyre which gave the cause of death as "cerebral hemorrhage—thrombosis femoral artery." This artery is the chief artery of the thigh.

Dr. McIntyre ruled out cerebral embolism saying:

"I do not think Mr. Ryan's death resulted from a cerebral embolism, because there were no sources for the development of such an embolism. Emboli arising in the legs would have been venous in origin and resulted in a pulmonary emboli rather than cerebral. It is, therefore, my opinion that cerebral hemorrhage was more likely the cause of the death of David Ryan, and in my opinion his death was not associated with cerebral embolism."

On the other hand Dr. Wm. E. Jones, an associate of Dr. McIntyre, treated Mr. Ryan for injuries sustained in the Mule Barn fire and who also attended him in his last illness, testified that, in his opinion, the cause of death was "cerebral embolism." Dr. Jones gave these definitions:

"A cerebral hemorrhage is active bleeding from a ruptured blood vessel in the substance of the brain. A cerebral thrombosis is the formation of a clot in the blood vessel of the brain. A cerebral embolism is a blood clot formed elsewhere and lodges in a blood vessel in the brain."

Dr. Jones testified that cerebral embolism could result from trauma on any part of the body and that the normal lapse of time between trauma and cerebral embolism was ten days to two weeks. There was no definite evidence here, Dr. Jones testified, of myocardial infarction prior to April 22, 1952, some 82 days after the injury at the Mule Barn.

Dr. Jones further testified, however:

"Q. Are there any exceptions to those enumerations you made about a trauma not causing an embolism of the brain, where a blow has been received in some other part of the body and as a consequence of that blow, some time later is it possible or probable an embolism in the brain would result? A. Yes, sir.

"Q. Then if a man had had some venous or arterial trouble and had received a heavy blow from a heavy piece of timber falling on his head and shoulders and the exertion of carrying on his activities of fighting a fire, could that have contributed or precipitated the condition that directly

caused his death on May 11, 1952?
A. Yes, sir.

\* \* \*. \* \* \*

"Q. Doctor, if trauma were received on February 1, 1952, and there broke loose tissue or a clot formed, could that clot float around in a man's blood stream from February 1, 1952 to May 11, 1952? A. It could not float around freely. It could remain in the blood stream attached to the blood vessels or to the wall of the heart.

"Q. Would that clot or that tissue —is it possible it could dissolve? A. It is possible it could, yes, sir—not dissolve, but be replaced by fibrous tissue.

"Q. It is probable that clots or obstructions remain in the blood stream without dissolving and floating around for as long as three months and eleven days? A. They can remain, not floating around however.

"Q. And is that the basis upon which you stated that the trauma could cause the cerebral embolism that resulted in the death of David Ryan? A. Is what the cause?

"Q. The blood clot remaining in the blood system? A. Yes, sir.

\* \* \* \* \* \*

"Q. Would heavy exertion in fighting a fire and receiving a blow on the head and shoulders from heavy timber falling in fighting a fire on February 1 have brought on a myocardial infarction? A. The exertion plus the stress and strain on his general system from the trauma could have precipitated a myocardial infarction.

"Q. In your opinion, is it probably what happened? Knowing the whole history of the man's case, from observing him in November, 1950, through December and starting again in February, 1952, up to the time of his death on May 11, and knowing about this injury he received in the fire and the exertion he went through at the fire—is it or not your opinion that probably contributed to the condition that immediately caused his death? A. Yes, sir.

\* \* \* \* \* \*

"Q. Is that your opinion from the history of this case and from your observation and your examination of the man, and the history of the entire case? A. From my observation and examination and review of other examinations, it is.

\* \* \* \* \* \*

"Q. We are not asking you to testify about them but you did take them into consideration with your own examination, and it is then now your conclusion and opinion that David Ryan's death on May 11, 1952, probably resulted from the contributing cause of the injuries received and the exertion at the fire February 1, 1952? A. Yes, sir.

\* \* \* \* \* \*

"Q. I will ask you this question, Doctor—from your examination of Mr. Ryan after February 1, 1952, up to the time of his death, your knowledge of his physical condition which you found, would you say that it is probable that his death would not have resulted on May 11, 1952, had it not been for the blow he received on February 1, 1952, and the exertion of fighting the fire, coupled with the condition which you found—is it probable that he would not have succumbed at that time? A. I think we could say that, yes, sir."

■ Doctors McIntyre and Jones were associated in the practice of their profession and this record contains no suggestion that either is other than an eminently qualified physician. The testimony of Dr. Jones supports the findings of the Commissioner, sustained by the trial court, and this Court would be wholly unjustified in

saying that the opinion testimony of Dr. McIntyre is entitled to credence and belief but that the opinion testimony of Dr. Jones is not so entitled. Board of Firemen's Relief & Retirement Fund Trustees v. Marks, 150 Tex. 433, 242 S.W.2d 181, 27 A.L.R.2d 965.

■ It is our conclusion, from a consideration of the entire record, that the decision of the Commissioner finds reasonable support in substantial evidence.

Appellant's third point is that the court erred in refusing to permit it to impeach Dr. Jones by refusing to admit in evidence prior statements of Dr. Jones inconsistent with his opinion that Mr. Ryan died from cerebral embolism.

Dr. Jones testified by deposition only. These were taken by and introduced in evidence by appellant without limitation or reservation. Appellant does not claim surprise.

■ There was no error in refusing to permit impeachment of Dr. Jones in the manner proposed since the witness was vouched for by appellant and the element of surprise is lacking. Clary v. Morgan Motor Co., Tex.Civ.App., Fort Worth, 246 S.W.2d 936; 45 Tex.Jur. Witnesses, Sec. 303 et seq.

By appellant's fourth point complaint is made of the refusal of the trial court to admit in evidence a transcript containing the evidence introduced at the hearing held by the local Board at Texarkana.

■ If the rule in appeals from an order of the Railroad Commission is applicable then this transcript was not, per se, admissible. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 80, 161 S.W.2d 1022, 1030. Section 18 of Article 6243e merely provides for an appeal to the proper court of Travis County and makes no specifications for the trial. It follows then, we believe, that the rule announced in the Shell Case for appeals from administrative orders generally is applicable in this proceeding.

Appellant's last point is that the court erred in ordering Mrs. Ryan's pension to commence June 1, 1952.

No complaint on this score was made in the trial court.

■ The event which gave rise to Mrs. Ryan's right to a pension was the death of her husband from causes growing out of or in consequence of the performance of his duties as a fireman. This event, in the absence of any contrary statutory provision, necessarily fixes the date on which the pension should commence. We do not say that back pensions could not be waived nor that prejudice to other pensioners might not create an estoppel to claim back pensions but there is no evidence of either waiver or estoppel in this record.

Finding no error the judgment of the trial court is affirmed.

Affirmed.