601 A.2d 789

Joyce E. CROUSE, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF GENERAL SERVICES and Bureau of Risk and Insurance Management.

The TOWNSHIP OF ROSS, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF GENERAL SERVICES.

Supreme Court of Pennsylvania.

Argued Dec. 12, 1989.

Decided Jan. 3, 1992.

Larsen, J., filed dissenting opinion in which Papadakos, J., joined.

Papadakos, J., filed dissenting opinion in which Larsen, J., joined.

D. Scott Eaby, Clifford T. Early, and C. Donald Gates, for appellant.

Charles E. Anderson, P. Alan Zulick, and Michael D. Reed for Dept. of Gen. Services at Nos. 39 and 30.

T. Francis Horning, and Joseph D. Buckley, for Bureau of Risk and Ins. Management at No. 39.

OPINION

NIX, Chief Judge.

Appellants are appealing from orders of the Commonwealth Court which affirmed the Department of General Services' ("Department") and the Bureau of Risk and Insurance Management's ("Bureau") denial of death benefits provided by Section 1 of the Act of June 24, 1976, P.L. 424, No. 101, *as amended*, 53 P.S. § 891 (Act 101).

In *Crouse v. Commonwealth, Dep't of General Services*, 116 Pa.Commw. 43, 540 A.2d 1015 (1988), the decedent, a volunteer fireman, suffered a myocardial infarction in 1970 and was diagnosed with coronary artery heart disease. In 1976 the decedent had a second myocardial infarction. On November 4, 1981, Mr. Crouse, while putting on his equipment to respond to an alarm, again suffered a myocardial infarction which required hospitalization. In connection with that incident it was determined that he had suffered an extensive interior infarction complicated by mild heart failure and ventricular arrhythmia with frequent runs of ventricular tachycardia. Because of his condition, he was placed on curtailed status by the fire department. On February 17, 1982, decedent was again hospitalized after a stress test produced ventricular tachycardia. A catheterization demonstrated significant blockage in three arteries as well as the presence of an aneurysm in the area of his infarction.

On March 29, 1982, the date of the incident which resulted in the fatal attack, decedent's fire unit responded to a fire call. As a result of the curtailed status assigned to Mr. Crouse following the November 1981 incident, he did not go to the fire scene, but remained in the fire station while his colleagues responded to the call. When they returned, they found Mr. Crouse dead.

Mr. Crouse's surviving spouse sought the $25,000 death benefit provided for under Act 101. In its original form, Act 101 provided in relevant part:

In the event a law enforcement officer, ambulance service or rescue squad member or firefighter is *killed in the performance of his duties,* such political subdivision within 30 days from the date of death shall submit certification of such death to the Commonwealth. A volunteer firefighter shall be deemed to be acting in the performance of his duties for the purposes of this act going to or directly returning from a fire which the fire company or fire department attended including travel from and direct return to a firefighter's home, place of business or other place where he or she shall have been when he or she received the call or alarm or while participating in instruction fire drills in which the fire department or fire company shall have participated or while repairing or doing other work about or on the fire authorization of the chief of the fire company or fire department or other person in charge or while answering any emergency calls for any purpose or while riding upon the fire apparatus which is owned or used by the fire company or fire department or while performing any other duties of such fire company or fire department as authorized by the municipality or while performing duties imposed by section 15, act of April 27, 1927 (P.L. 465, No. 299), referred to as the Fire and Panic Act.

\* \* \* \* \* \*

Upon receipt of such certification, the Commonwealth shall, from moneys payable out of the General Fund, pay to the political subdivision the sum of $25,000. Within five days of receipt of said sum from the Commonwealth, the political subdivision shall pay such sum as a benefit to the surviving spouse....

53 P.S. § 891 (footnotes omitted; emphasis added). The 1981 amendment to the Act provided in relevant part:

This act shall take effect immediately and its provisions shall be retroactive to January 1, 1976 and shall be applicable to the deaths of all firefighters, ambulance service or rescue squad members and law enforcement personnel *dying on and after said date as the direct*

*result of injuries sustained in the performance of their duties*, regardless of the date when such injuries occurred.

*Id.* § 891 note (Emphasis added.)[1]

The hearing examiner concluded that Mr. Crouse's death was not caused by the activities engaged in by the decedent on November 4, 1981, or on March 29, 1982, but rather was a direct result of a progressive deterioration of his heart disease. Based upon this conclusion benefits were denied. The Commonwealth Court affirmed the hearing examiner's assessment of the causation requirement under the Act and affirmed the conclusion that appellant had failed to establish her entitlement to the benefits under the Act.

In the companion case, *Township of Ross v. Commonwealth, Dep't. of General Services,* 116 Pa.Commw. 532, 542 A.2d 613 (1988), Mr. Ehrman, a volunteer fireman, responded to a fire scene on April 19, 1977. His responsibility was to direct traffic to prevent interference with the efforts of the firefighters in controlling and extinguishing the fire. While discharging this responsibility Ehrman mentioned to a fellow firefighter that he did not feel well. Shortly thereafter he suffered a fatal heart attack.

■ Pursuant to Act 101, the Township paid the widow the $25,000 believing that she was so entitled. The Township then sought reimbursement from the Bureau, which denied the request on March 24, 1981.[2] On October 16, 1981, Act 101 was amended, with the amendments to be retroactive to January 1, 1976. The Township resubmitted the claim to the Bureau to be reconsidered in light of the amended provision. After reconsideration, the Bureau again concluded that the claim should be denied. The Bureau found, *inter alia,* that causation between perform-

1. The 1981 Amendment to Act 101 was effective October 1981 and therefore is applicable in these cases, since Mr. Ehrman and Mr. Crouse died on April 19, 1977, and March 29, 1982, respectively.

2. The Township erroneously filed simultaneous appeals with the Bureau and Commonwealth Court. The Commonwealth Court appeal was dismissed on May 7, 1984.

ance of duties and injury was required but not proven.[3] The Department and the Commonwealth Court subsequently affirmed that decision.[4]

In the *Crouse* appeal, the Commonwealth Court thoroughly examined the present state of Act 101 as it had been interpreted to date. In so doing, that court relied heavily on *Seybold v. Commonwealth, Department of General Services*, 75 Pa.Commw. 118, 461 A.2d 353 (1983) (hereinafter referred to as *"Seybold I"*), and a liberal reading of the Act. The *Crouse* Court first examined whether the record established that decedent had suffered an injury within the meaning of the Act. In answering this question, the court turned to *Seybold I* which, under facts very similar to the instant case, held that myocardial infarction is an injury within the intendment of the Act.

The next step in the *Crouse* court's analysis was an examination of the causation requirements of the Act. Here the court determined that two distinct causal elements had to be proven for eligibility to be established. The court found the first causal requirement to be death as a direct result of an injury and the second to be that the fatal injury must have resulted from the performance of duties. In regard to the first element, the court stated:

> We find that the only logical reading of Act 101 requires that there be a causal connection between the injury suffered by the firefighter and his subsequent death. However, in keeping with a liberal interpretation of the statute as set forth in *Seybold I*, we find that the death need not immediately follow this injury. As in the case before us, the firefighter's death occurred over four

3. It is important to note the Workmen's Compensation Bureau found Mr. Ehrman's death was work-related. We, however, are not bound by that determination where the record fails to support such a finding, and where differing standards for eligibility are statutorily mandated by different agencies for different policy objectives.

4. While this appeal was pending, the parties requested a remand in light of the Commonwealth Court's decision in *Seybold v. Commonwealth, Dep't of General Services*, 75 Pa.Commw. 118, 461 A.2d 353 (1983) (*Seybold I*). Once again the Bureau denied reimbursement and the Department affirmed.

months following the injury suffered *i.e.*, the November 4, 1981 myocardial infarction. Yet the hearing examiner concluded that the earlier myocardial infarction caused the decedent's death on March 29, 1982 due to the damage that the November 4, 1981 injury caused to his heart. Accordingly, the first element of causation has been satisfied in this case. That is, the firefighter's death was a direct result of an injury.

*Crouse*, 116 Pa.Commw. at 47–48, 540 A.2d at 1017.

The *Crouse* court next examined the second causal requirement it found embodied by the phrase **"injury sustained in the performance of ... duties."** 53 P.S. § 891. Under that court's plain reading of the statute it concluded that the "injury must be suffered as a result of the duties performed." *Crouse*, 116 Pa.Commw. at 48, 540 A.2d at 1017. Under this view a second element of causation was required by Act 101. The court thus denied the appellant's claim concluding that the second element had not been established.

In *Ross*, the Commonwealth Court rejected the appellant's argument that the phrase **"sustained in the performance of ... duties"** should not be interpreted as a causal requirement. In so doing, the Court relied on both *Seybold I* and *Crouse* for the proposition that two distinct causal elements must be established under Act 101.

On appeal to this Court, both appellants concede that they must establish a causal relation between an injury and death. Therefore, the issue we are now called upon to decide is whether eligibility under Act 101 is contingent upon the showing of a causal relation between the duties performed and the injury which results in death. Resolution of this question necessarily turns upon our interpretation of the legislative intent when Act 101 was passed in 1976 and its subsequent amendment in 1981.

Both appellants urge us to interpret the eligibility language of Act 101 as requiring only that the fatal injury occur while the decedent was on duty. However, both appellants use different rationales to support their interpre-

tations. Appellant Mrs. Crouse argues first that under the original version of Act 101, there was no indication that the cause of death was required to be directly related to the duties in question. Mrs. Crouse asserts that under the amended version of Act 101, causation is required but only in regard to an injury causing death. Hence Mrs. Crouse argues that the phrase **"sustained in the performance of ... duties"** was not intended to supplant the phrase **"killed in the performance of duties"** but rather to indicate that the temporal relation between death and the performance of duties is of no consequence. That is, Mrs. Crouse suggests that under the original Act eligibility would arise as long as the decedent died *while on duty* but that under the amended Act, *"it doesn't matter when the death occurs* so long as it resulted from injuries 'sustained in the performance of duties.'"  Appellant's Brief at p. 7 (emphasis added). Mrs. Crouse supports her claim by noting that the retroactivity clause of Act 101 was implemented to accommodate a claimant whose decedent was injured prior to, but died after, the effective date of the 1981 amendment to Act 101. Accordingly, Mrs. Crouse contends that she is entitled to the benefits provided by Act 101 since her husband suffered a fatal injury, *i.e.*, a heart attack, while on duty.

Appellant, Township, contends that under a plain reading of the Act, death must be caused by an injury, *not* the performance of duties. To support its interpretation, the Township compares the dictionary definition of "result" (indicating causation) with that of **"sustain"** (indicating the suffering of a loss) to conclude there is no basis for finding a second causal relation in Act 101. *Citing,* Webster's New Riverside Dictionary (1984). The Township strenuously argues that the true intent of the legislature in using the phrase **"sustained in the performance ... of duties"** was to parallel the eligibility language of the Worker's Compensation Act, 77 P.S. § 411, which provides benefits for injuries **"arising in the course of employment."** The Township then suggests that because the phrase "arising in the course of employment" has never been construed as requir-

ing a causal relation, a similar construction should be given to the phrase **"sustained in the performance of ... duties."** Accordingly, the Township argues that it is entitled to relief because Mr. Ehrman was properly engaged in his duties as a fireman when he suffered an injury (*i.e.,* heart attack) cognizable under the Act, and that as a direct result thereof, he died.

The Department counters the appellant's interpretation by arguing that the use of the phrase **"sustained in the performance of ... duties"** adds a second causal element which must be satisfied before eligibility can accrue. The Department contends that this is the only logical interpretation which can be given to the Act because accepting appellants' construction would yield the unreasonable result that all firefighters who die while on duty, without regard to the factors which prompt death, could receive benefits. For the following reasons we find that the interpretation suggested by the Department is correct and that eligibility under Act 101 is premised upon a causal relation between the injury sustained and the duty performed.

■ The parties correctly argue that Act 101 is social legislation and, therefore, must be liberally construed. *See* 1 Pa.C.S. § 1928(c). *See, e.g., LeGare v. Unemployment Compensation, Board of Review,* 498 Pa. 72, 444 A.2d 1151 (1982); *Commonwealth v. College,* 497 Pa. 71, 439 A.2d 107 (1981); *Krawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627 (1981); *Kremer v. State Ethics Commission,* 56 Pa.Commw. 160, 424 A.2d 968 (1981). This characterization was acknowledged by the Commonwealth Court in *Murphy v. Township of Abington,* 88 Pa.Commw. 491, 490 A.2d 483 (1985), which relied on that court's reasoning in *Seybold I.* That conclusion is consistent with the purpose underlying similar laws such as the firemen's pension fund laws, *Bley v. Dep't of Labor and Industry,* 484 Pa. 365, 399 A.2d 119 (1979); *Garratt v. City of Philadelphia,* 387 Pa. 442, 127 A.2d 738 (1956); and the Workmen's Compensation Laws. *See, e.g., Krawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627 (1981).

When passed in its original form in 1976, Act 101 used the phrase **"killed in the performance of his duties"** to indicate the event which triggered eligibility. In 1981 the legislature amended the eligibility language to **"dying . . . as the direct result of injuries sustained in the performance of . . . duties."** In the interim, the Department promulgated the following very strict definition of the word **"killed"** through its regulation 89.1:

> [d]eath as the direct and proximate result of a wound or other condition of the body *caused by external force*, including injuries by bullets; explosives; sharp instruments; blunt objects or other physical blows; chemicals; electricity; climatic conditions; including gasses, heat, and lack of air; infectious diseases; radiation; and bacteria; *but excluding stress and strain and diseases* which arise merely out of the general performance of duty.

4 Pa.Code § 89.1 (emphasis added).

In amending Act 101 after the Department issued regulation 89.1, we can infer that the legislature was not satisfied with the Department's interpretation of the key language of Act 101 and intended a substantive change. *See e.g., Maslund v. Bachman,* 473 Pa. 280, 289, 374 A.2d 517, 521 (1977); *Sutherland Statutory Construction,* 4th Ed. (Annotated), Section 22.30. By using the terms **"direct result"** and **"sustained in the performance of,"** it is fair to conclude that the legislature intended to retain the causal elements embodied in the word **"killed."** Because Act 101 is social legislation which is intended to be given broad interpretation, we presume that the change intended by the General Assembly was directed at that portion of Act 101 which excluded stress, strain and diseases as compensable causes of death. The Commonwealth Court in *Seybold I* reached a similar conclusion when it struck down regulation 89.1 as being too restrictive in light of the 1981 amendment to Act 101. Because of the factual similarities between *Seybold I* and the instant cases, a review of *Seybold I* provides some assistance in our search for legislative intent.

On February 1, 1976, Charles H. Seybold responded to a fire alarm, performed firefighting duties and later died of a heart attack. Charles' wife, Marie Seybold, applied to the Bureau for Act 101 benefits but was denied. The hearing examiner accepted the testimony of the Commonwealth's expert that Mr. Seybold's death was the result of a slowly progressive disease process that climaxed with cardiac death and found, therefore, that he was not **"killed"** as that term was defined by Regulation 89.1. The Department affirmed the Bureau's findings and an appeal was taken to the Commonwealth Court.

In *Seybold I,* the Commonwealth Court reversed and remanded the case, finding the Bureau's use of the term **"killed"** as it is defined by Regulation 89.1 as the standard for eligibility was too restrictive in light of the 1981 amendment to Act 101. In so doing, the Commonwealth Court gave a thorough examination of Act 101 and recognized its causal elements. Specifically, that court began its search for legislative intent by examining the legislature's use of the word **"killed"** under the original Act. The court, upon reviewing the Superior Court's decision in *Vernon v. Firemen's Pension Fund,* 160 Pa.Super. 617, 52 A.2d 199 (1947), found that the word **"killed"** necessarily connoted causation when used in common parlance. This interpretation by the *Seybold I* court was further bolstered by this writer's dissenting opinion in *Appeal of Stanton,* 499 Pa. 151, 156, 452 A.2d 496, 498 (1982) (Nix, J., dissenting on other grounds), which stated, "[T]he word 'killed' implies death resulting from a traumatic event ...", 75 Pa.Commonwealth Ct. at 124, 461 A.2d at 356, *citing Stanton,* 499 Pa. at 159, 452 A.2d at 500, and a medical definition of "traumatic event" which includes emotional shock or psychic trauma. *Seybold I,* 75 Pa.Commw. at 124, 461 A.2d at 356, *citing,* Dorland's Medical Dictionary (24th Edition, 1965). The Commonwealth Court also considered previous interpretations under Pennsylvania common law of the term "injury" to suggest that it has been liberally construed to encompass death from stress, strain and disease. *Seybold*

*I*, 75 Pa.Commw. at 124, 461 A.2d at 356. The *Seybold I* court concluded, "[I]t is unreasonable to interpret the eligibility language of [Act 101] as amended to call for the limitations imposed by the Department in its regulation 89.1." *Id.*, 75 Pa.Commonwealth Ct. at 125, 461 A.2d at 356.

On remand the Bureau applied the revised standard but still found that Mr. Seybold's death was not related to his job as a firefighter. Appeal was again taken to the Commonwealth Court. In *Seybold v. Commonwealth, Dep't of General Services*, 107 Pa.Commw. 349, 528 A.2d 999 (1986) (*Seybold II*), the Commonwealth Court limited its opinion to a review of whether the hearing examiner's findings were supported by substantial evidence and found affirmatively.

It is apparent from the result of these cases that the Commonwealth Court was not willing to confer eligibility under Act 101 absent a showing that the performance of duties caused the fatal injury. It is equally apparent that the Commonwealth Court interpreted the amendment to Act 101 in an expansive manner such that fatal injuries resulting from stress, strain, and diseases are compensable.

The next step in our analysis is a plain reading of Act 101. Our focal point here is the Act's eligibility language, specifically the phrase **"dying ... as the direct result of injuries sustained in the performance of ... duties."** A plain reading of this language indicates that Act 101 comprises two distinct causal elements that a claimant must prove to establish eligibility. First there must be an injury which would not have occurred but for the performance of duty-related activity. Second, the injury must cause death. The phrase **"sustained in the performance of ... duties,"** as used in this context, should be interpreted to mean that something from the decedent's environment while on duty must precipitate the injury which causes death. The application of this interpretation depends upon the facts presented. If the decedent suffered a wholly unanticipated injury a claimant must show that the stimulus of his decedent's injury was initiated by the decedent's on-duty activities. However, if the injury suffered was related to a preexisting condition, the claimant must

prove that the performance of duties exacerbated the condition to the extent that death was not a mere coincidence. *See, e.g., Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978). The phrase **"direct result,"** as used in this context, should be construed as the causal link connecting injury to the death, which, when read in conjunction with the first element, illuminates the relation between death and duty.

An examination of Pennsylvania statutes involving similar subjects is also instructive. 1 Pa.C.S. § 1921(a)(5). Of particular relevance are those statutes providing pension benefits for municipal police, firefighters, etc. In *Creighan v. Fireman's Relief and Pension Fund*, 397 Pa. 419, 421, 155 A.2d 844, 845 (1959), this Court held that a municipal fireman who contracted tuberculosis as a result of his firefighting duties was "injured in the line of duty" as required by the Firemen's Relief and Pension Fund Law, 53 P.S. § 23601–23642, and therefore, entitled to benefits. *See also Vernon v. Firemen's Pension Fund*, 160 Pa.Super. 617, 52 A.2d 199 (1947). *Compare, Chirico v. Board of Supervisors of Newtown Township*, 518 Pa. 572, 544 A.2d 1313 (1988) (police pension benefits denied where 53 P.S. § 771 required death or injury be "in service" and claimants were injured while off-duty); *Appeal of Stanton, supra*, (with this writer dissenting, this Court interpreted pension entitlement provision of 53 P.S. §§ 39321, 39327 as providing pension benefits to the survivors of a fireman who died in a non-job-related accident).

Our Worker's Compensation legislation also uses language similar to that of Act 101. Section 411 of the Workmen's Compensation Act, 77 P.S. § 411, defines an eligible injury as one "arising in the course of ... employment and related thereto...." In *Workmen's Compensation Appeal Board v. Pincus, supra*, this Court held that, under the Worker's Compensation Act, heart attacks are compensable injuries and that a showing of unusual strain or exertion is not necessary where the decedent had a pre-existing condition. The claimant in that case prevailed by

establishing through competent medical testimony that her "decedent's heart attack was directly related to the rigors of his employment." *Id.*, 479 Pa. at 297, 388 A.2d 659.

As for the consequences of a particular interpretation, we are mindful of two coexisting rules of statutory interpretation: 1) the General Assembly never intends an absurd or unreasonable result, 1 Pa.C.S. § 1922(1); and 2) the General Assembly intends an entire statute to be effective, 1 Pa.C.S. § 1922(2). Appellants argue that heart attacks are injuries within the scope of Act 101 and, since each decedent herein was performing his duty at the time of death, benefits accrued. Adopting appellants' construction would yield the result that those claimants whose decedents die while on duty, regardless of how death occurred, would receive death benefits. We find this construction unreasonable. If the legislature intended general life insurance coverage where it occurs at the work site, it would have so provided.[5] Adopting appellants' construction would also render ineffective the causal elements embodied by the legislature's use of the phrase **"sustained in the performance of ... duties."** Such a result should be avoided. 1 Pa.C.S. § 1921(a).

Based on our analysis, we conclude that the legislature intended that eligibility for death benefits under Act 101 be contingent upon establishing a causal relation between death and performance of duties.[6] Moreover, we

---

**5.** The effect of the dissent is to provide a gratuitous insurance covering death at the work site without regard to any stimulus from that environment contributing to the event. While this benevolence would be applauded as a benefit provided by an individual employer for an employee's faithful service, this strained interpretation would be irresponsible where the cost is assessed upon the taxpayers of this Commonwealth.

**6.** Our interpretation is consistent with the majority of jurisdictions which have construed the same or similar language contained in similar statutes. *See, e.g., Pounds v. Board of Trustees,* 89 Or.App. 552, 749 P.2d 1227 (1988); *Ashley v. New York State Policemen's and Firemen's Retirement Sys.,* 132 App.Div.2d 90, 521 N.Y.S.2d 845 (1987); *Kramer v. State Peace Officers Benefit Fund,* 380 N.W.2d 497 (Minn. 1986); *Johnson v. Retirement Board of Policemen's Annuity and Benefit Fund,* 137 Ill.App.3d 546, 92 Ill.Dec. 395, 484 N.E.2d 1250, *aff'd.* 114

find that by virtue of the 1981 amendment to Act 101, the legislature intended to expand the range of compensable injuries to those resulting from stress, strain, and diseases, including heart attacks. *See, e.g., Pincus*, 479 Pa. at 295–297, 388 A.2d at 663–664 (1978). However, because the appellants failed to establish the requisite causal relation between duty and injury, their appeal must fail.

Accordingly, the orders of the Commonwealth Court are affirmed.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

PAPADAKOS files a dissenting opinion in which LARSEN, J., joins.

LARSEN, Justice, dissenting.

The issue raised by this appeal is whether the phrase "injuries sustained in the performance of their duties" means injuries *caused by* the performance of their duties. Because I believe that "sustained" is not the literal or legal equivalent of "caused by," I most vigorously dissent to the majority's holding to the contrary.

Section 3 of Act 101 [1] provides, in relevant part, that the Act "shall be applicable to the deaths of all firefighters ... dying ... as the direct result of injuries sustained in the

Ill.2d 518, 104 Ill.Dec. 221, 502 N.E.2d 718 (1985); *Temple Terrace v. Bailey*, 481 So.2d 49 (Fla.App. D1 1985); *Polen v. Police and Firemen's Retirement and Relief Board*, 466 A.2d 464 (D.C.App.1983); *LeStrange v. City of Berkeley*, 233 Cal.App.2d 276, 43 Cal.Rptr. 455 (1983); *Police Comm'r. of Baltimore City v. King*, 219 Md. 127, 148 A.2d 562 (1959); *Board. of Firemen's Relief and Retirement Fund Trustees v. Ryan*, 273 S.W.2d 908 (Tex.Civ.App.1954); *Sabathier v. Board of Trustees, Firemen's Pension and Relief Fund*, 225 La. 31, 72 So.2d 1 (1954); *Benedict v. Board. of Police Pension Fund Comm'r. of Seattle*, 35 Wash.2d 465, 214 P.2d 171 (1950); *Mook v. Lincoln*, 146 Neb. 779, 21 N.W.2d 743 (1946); *State ex rel. Moore v. Glassco*, 347 Mo. 977, 149 S.W.2d 848 (1941); *Scott v. Jersey City*, 68 NJL 687, 54 A. 441 (1903).

1. Death Benefits for Firefighters, Ambulance or Rescue Squad Members and Law Enforcement Officers, Act of 1976, June 24, P.L. 424, No. 101, as amended, 1981, Oct. 16, P.L. 295, No. 102, imm. effective, 53 P.S. §§ 891–892.

performance of their duties, regardless of the date when such injuries occurred." If the legislature had intended that the injuries causing death must have been a result of the duties performed by a decedent, the legislature would have used specific language of causation. Instead, the legislature used the word "sustained." The Random House Dictionary of the English Language (2d Ed.) defines sustain as to "undergo, experience, or suffer." There is no element of causation in any of these words. Thus, I would interpret the phrase "sustained in the performance of their duties," to mean any injury suffered during the performance of their duties. Thus, the claimants herein are entitled to recover death benefits pursuant to Act 101, as the deaths resulted from injuries suffered during the performance of the decedents' duties.[2]

Accordingly, I would reverse the orders of the Commonwealth Court in these cases.

PAPADAKOS, J., joins in this dissenting opinion.

PAPADAKOS, Justice, dissenting.

I join in the dissent of Mr. Justice Larsen and I would add the word "happening" in the explanation of the word "sustained" so that I read the pertinent section of the Act as saying, "injuries happening in the performance of their duties."

Furthermore, I have never known remedial legislation to be enacted by a legislature as a means of reducing costs assessed against the taxpayers. On the contrary, remedial legislation is enacted for the benefit of those individuals intended to be favored because of their special circumstances in society. In my view, the Appellants are clearly entitled to the benefits of the Act since their decedents died

---

**2.** The majority is mistaken in finding that this writer would "provide a gratuitous insurance covering death at the work site without regard to any stimulus from that environment contributing to the event." Maj. op. at 796 n. 6. If a decedent were not injured *in the performance of his or her duties for the taxpayer,* benefits could not be awarded under Act 101.

from injuries happening while in the performance of their duties.

LARSEN, J., joins this dissenting opinion.