IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Estate of Thomas R. Tratthen      :
and Lisa Tratthen,      :
         Petitioners      :
     :
     :
       v.      :
     :
Department of General Services,      :    No. 1089 C.D. 2024
         Respondent      :    Argued: September 9, 2025


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COVEY                            FILED: February 2, 2026


       The Estate (Estate) of Thomas R. Tratthen (Decedent) and Decedent's wife, Lisa Tratthen (Applicant), (collectively, Petitioners) petition this Court for review of the Department of General Services' (Department) August 12, 2024 final order (Final Order) denying Petitioners' Line of Duty Death (LODD) benefits under the Emergency and Law Enforcement Personnel Death Benefits Act (Act 101).[1] Petitioners present two issues for this Court's review: (1) whether the Department correctly applied the burden of proof; and (2) whether Petitioners established the causal connection between Decedent's death and the performance of his duties as a firefighter necessary to establish an entitlement to LODD benefits under Act 101. After review, this Court affirms.

---

[1] Act of June 24, 1976, P.L. 424, No. 101, *as amended*, 53 P.S. §§ 891-892.1.

## Background

Decedent worked as a volunteer firefighter in the early 1990s and continued to volunteer for Excelsior Hose (Excelsior) in Olyphant Borough until the time he was diagnosed with metastatic colon cancer following a colonoscopy on June 4, 2018. Decedent also worked as a full-time paid firefighter for Dunmore Borough from 2000 to 2007, and then as a part-time paid firefighter for Dunmore Borough until June 4, 2018. Decedent died due to metastatic colon cancer on January 20, 2019.

Thereafter, Applicant filed a fatal claim petition seeking workers' compensation (WC) benefits. After the fatal claim petition was resolved, Applicant applied for Act 101 benefits with the Department. On July 26, 2022, the Department's Bureau of Finance and Risk Management (Bureau) denied Petitioners' LODD benefits claim. On August 17, 2022, Petitioners filed a Notice of Appeal and Request for Hearing. On May 12, 2023, Department Hearing Officer Michael T. Foerster (Hearing Officer Foerster) held a hearing at which the Bureau and Petitioners stipulated to certain facts and documents. In addition, the Bureau entered into evidence additional documents and both sides presented witnesses.

Petitioners presented, *inter alia*, Tee Guidotti, M.D.'s (Dr. Guidotti) April 3, 2020 report to support Petitioners' Act 101 claim, which had also been produced in support of Decedent's claim for WC benefits. Therein, Dr. Guidotti stated:

> Given [Decedent's] long service and exposure to International Agency for Research on Cancer (IARC) Group I carcinogens in smoke, soot, diesel emissions, and building materials, I can opine, to a reasonable degree of medical certainty, that his volunteer fire service was, at a minimum, **a substantial contributing factor to his diagnosis with cancer**.

Reproduced Record (R.R.) at 138a (emphasis added).

2

The Bureau presented, *inter alia*, Howard Sandler, M.D.'s (Dr. Sandler) December 3, 2020 report authored on behalf of the insurance carrier defending against Decedent's WC claim. Therein, Dr. Sandler referenced Decedent's diabetes and his 25-year history of smokeless tobacco use, and opined:

> [Decedent's] diagnosed colorectal or rectal carcinomas are most likely caused by his underlying personal risk factors as discussed previously[,] such as diet, minimal physical activity, diabetes mellitus, obesity, smoking[,] and alcohol consumption. . . . [Decedent's] family history of various cancers[,] including colon cancer[,] is indeed a risk factor for the development of colorectal/rectal cancer.

R.R. at 175a.

The Bureau also presented Donald McGraw, M.D.'s (Dr. McGraw) November 14, 2020 report authored on the WC insurance carrier's behalf. Therein, Dr. McGraw observed that Decedent had a family history of colon cancer, referenced Decedent's poorly controlled diabetes, and explained that colon cancer risk is elevated in individuals with diabetes. Dr. McGraw also noted Decedent's smokeless tobacco use and a 25-year light smoking history, and concluded that both exposures represented a substantial colon cancer risk.

Petitioners offered Dr. Guidotti's March 15, 2021 report in rebuttal to Dr. Sandler's and Dr. McGraw's reports. Therein, Dr. Guidotti stated:

> Importantly, **Dr. McGraw does not seem to be responsive to the critical question of whether firefighting was a "substantial contributing factor" that materially contributed to [Decedent's] death from colon cancer**. It is my understanding, as a lay expert, that the question that I must answer is whether the person's occupation, or in this case the fire service, "materially contributed to" his cancer diagnosis, disability, or death. I also understand that the test is whether the material contribution was more likely than not, by the weight of evidence, not scientific certainty. Dr. McGraw does not

3

seem to be responding to this question, which I understand to be critical in the Commonwealth of Pennsylvania.

R.R. at 184a (emphasis added). Dr. Guidotti opined the same with respect to Dr. Sandler's testimony. *See* R.R. at 186a. Dr. Guidotti concluded: "After reading both reports and acknowledging that new information is provided, I find no basis on which to revise my opinion, which is that [**Decedent's**] **occupation as a firefighter and exposure to carcinogens in association with his occupation were substantial contributing factors to his risk for colon cancer**." R.R. at 187a (emphasis added).

The Bureau offered Dr. Sandler's June 22, 2021 report in rebuttal to Dr. Guidotti's March 15, 2021 report. Therein, Dr. Sandler observed that Decedent's medical records reflect a colon cancer history in a maternal uncle and maternal aunt, and a history of other cancer types in his family.

On October 26, 2023, following the parties' submission of briefs, Hearing Officer Foerster filed his Proposed Report and Order recommending that the Department affirm the Bureau's decision denying LODD benefits. On August 12, 2024, the Department issued its Final Order adopting the Proposed Report and Order.[2] Petitioners appealed to this Court.[3]

**Discussion**

Petitioners first argue that Applicant simply needed to establish that Decedent died as a result of the performance of his duties to establish an entitlement

---

[2] The Department Secretary's (Secretary) Final Order adopted the Proposed Report and Order, with the exception of Finding of Fact (FOF) 23 which stated: "There is no family history of colon cancer." Certified Record (C.R.) at 366. In its place, the Secretary made his own FOF 23, which stated: "[Applicant] was not aware of a history of colon cancer in [Decedent's] family, however, [Decedent's] medical records note a history of colon cancer in a maternal uncle and maternal aunt, and a history of other cancer types in his family." C.R. at 384.

[3] "This Court's review determines whether the factual findings in the adjudication are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed." *Diaz v. Dep't of Gen. Servs.*, 281 A.3d 1099, 1104 n.6 (Pa. Cmwlth. 2022).

4

to LODD benefits pursuant to Act 101 and that the Department erred in applying a heightened but-for burden of proof. Petitioners insist that Applicant's testimony, Dr. Guidotti's reports, firefighters Eric Shigo's and John Malecki's Affidavits, and documentary evidence from the IARC clearly establish the necessary causal connection between Decedent's fire service exposures, diagnosis of colon cancer, and death. Petitioners cite *Diaz*, 281 A.3d 1099 (Pa. Cmwlth. 2022), to support their position.

The Department asserts that Petitioners sought to meet the required causal standard by proffering that Decedent's firefighting service was *a substantial contributing factor* in his death from colon cancer which is the causation standard under the WC Act.[4] The Department rejoins that Act 101 requires proof of but-for causation showing that Decedent's death would not have occurred but for his service as a firefighter. The Department emphasizes that the General Assembly established different eligibility requirements under the WC Act and Act 101, and the causation standards in each are not interchangeable.

Initially, Section 1(a) of Act 101 provides, in relevant part:

> In the event a . . . firefighter . . . **dies as a result of the performance of his duties**, an application [for LODD benefits], including a certification of death, shall be made to the [D]epartment within three years of the date of such death by any of the following:
>
> . . . .
>
> (6) Any survivor eligible for payment of benefits under this act or individual authorized to act on the survivor's behalf.

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

5

53 P.S. § 891(a) (emphasis added).  Section 2.1 of Act 101 instructs: "[A]ct [101] shall be broadly construed to grant benefits to firefighters . . . for deaths related to the performance of their duties.

In *Crouse v. Department of General Services*, 601 A.2d 789 (Pa. 1992),[5] the Pennsylvania Supreme Court explained:

> Our focal point here is [Act 101's] eligibility language, specifically the phrase "**dying** . . . **as the direct result of injuries sustained in the performance of** . . . **duties**." A plain reading of this language indicates that Act 101 comprises two distinct causal elements that a claimant must prove to establish eligibility.  First[,] *there must be an injury which would not have occurred but for the performance of duty-related activity*.  Second, the injury must cause death.  The phrase "**sustained in the performance of** . . . **duties**," as used in this context, should be interpreted to mean that *something from the decedent's environment while on duty must precipitate the injury which causes death*.  The application of this interpretation depends upon the facts presented.  If the decedent suffered a wholly unanticipated injury a claimant must show that the stimulus of [the] decedent's injury was initiated by the decedent's on-duty activities.  However, if the injury suffered was related to a preexisting condition, the claimant must prove that the performance of duties exacerbated the condition to the extent that death was not a mere coincidence.  *See, e.g.*, *Workmen's Comp*[.] *Appeal* [*Bd.*] *v. Bernard S. Pincus Co.*, . . . 388 A.2d 659 ([Pa.] 1978).  The phrase "**direct result**," as used in this context, should be construed as the causal link connecting injury to the death, which, when read in conjunction with the first element, illuminates the relation between death and duty.

---

[5] At the time our Pennsylvania Supreme Court decided *Crouse*, Section 1(a) of Act 101 stated, in pertinent part: "dies as a **direct** result of the performance of his duties[.]" *Former* 53 P.S. § 891(a) (emphasis added).  The General Assembly amended Act 101 in 1994 and the word direct was removed.  Because the *Crouse* Court focused on the phrase *performance of his duties*, the reasoning applies herein.

*Crouse*, 601 A.2d at 795 (bold emphasis in original, italic and underline emphasis added).

> In sum, Act 101 requires a "causal relation between death and performance of duties," and it is to be construed liberally in favor of its intended beneficiaries. *Crouse* [*v. Department of General Services*], 601 A.2d [789,] 796 [(Pa. 1992)]. However, Act 101 is not intended to function as a general life insurance policy. *Id*.

*Diaz*, 281 A.3d at 1107. The *Diaz* Court explained: "Under Act 101, the **only** relevant inquiry is whether death comes 'as a result of the performance of [the decedent's] duties.' 53 P.S. § 891(a) (emphasis added)." *Diaz*, 281 A.3d at 1108. Consequently, here, in order to receive LODD benefits, Petitioners had to prove that "[b]ut for Decedent's [firefighting activities], [Decedent's colon cancer] would not have occurred." *Id*.

In its Final Order, the Department adopted Hearing Examiner Foerster's Proposed Report and Order, which included the following rationale:

> Applying the[] standards [espoused in *Crouse* and *Diaz*], one finds no relief for [Applicant]. The second element, death, is uncontested. It is the first element, "injury which would not have occurred but for the performance of duty-related activity" that is the issue. [Petitioners'] expert's opinions are stated by the [WC] standard, 'substantial contributing factor.' For instance,
>
> > [Petitioners' e]xpert provides a specific causation opinion pertinent to [Decedent]. In this regard, after considering [] both the impact of common risk factors and firefighting exposures, he unequivocally concluded that [Decedent's] "occupation as a firefighter and exposure to carcinogens in association with his occupation are *substantial contributing factors* to his risk for colon cancer." (p. 8).
>
> [Petitioners'] August 22, 2023 Br[.] at 10 (emphasis added); *see also* pages 11, 12, and 16. However, our

standard is the "but[-]for" standard stated in *Crouse* and *Diaz*. . . . There is no feasible way to state such fact pattern. The [Department] is aware of the origin of the reports: the [WC] claim. [The Department] is also aware that expert reports cost money; thus, this may be mere pragmatism. It also may be because there was no expert willing to say that 'but for the firefighting duties, [Decedent] would not have died from colon cancer.' There is a universe of possibilities that could lead to these expert reports presenting. The only thing [the Department] know[s] is that the record presenting is insufficient by the standards given to us.

Department's Final Order at 12. This Court agrees with the Department's reasoning. Given that the standard is whether, but for Decedent's firefighting activities, Decedent's colon cancer would not have occurred, and Petitioners did not present any evidence from which the Department could so conclude, the Department properly denied LODD benefits.[6]

**Conclusion**

For all of the above reasons, the Department's Final Order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Dumas did not participate in the decision in this matter.

---

[6] Given this court's disposition of Petitioners' first issue, the second issue is moot.

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Estate of Thomas R. Tratthen      :
and Lisa Tratthen,      :
             Petitioners      :
      :
          v.      :
      :
Department of General Services,      :    No. 1089 C.D. 2024
            Respondent      :

## O R D E R

AND NOW, this 2nd day of February, 2026, the Department of General Services' August 12, 2024 final order is affirmed.

_____

ANNE E. COVEY, Judge